**Amy Ahnise Matthews SEVER and Savannah Ahnise Matthews, Appellants,**

v.

**MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, Appellee.**

**No. 07–96–0427–CV.**

Court of Appeals of Texas, Amarillo.

April 10, 1997.

Rehearing Overruled May 21, 1997.

Jones Flygare Galey Brown & Wharton, G. Douglas Welch, Lubbock, for appellant.

Joe Heflin, Lubbock, McClesky Harriger Brazill & Graff, L.L.P., Steve Johnson, Lubbock, for appellee.

Before BOYD, C.J., and DODSON and REAVIS, JJ.

REAVIS, Justice.

By her first four points of error, Savannah Ahnise Matthews, a minor (Savannah), through her guardian ad litem, contends the trial court erred in determining that verbal statements by her father, Gary A. Matthews (Matthews) to a life insurance agent following her parents' divorce, were sufficient to constitute a redesignation of her mother, Amy Ahnise Matthews Sever (Amy), as the beneficiary of a life insurance policy. Savannah also contends that the trial court erred in (point five) failing to appoint a representative for the heirs of Matthews, (point six) by impressing a constructive trust to the extent of $50,000 out of the insurance proceeds for her benefit and (point seven) awarding the guardian ad litem only $2,331.30 as attorneys' fees and costs. For the reasons expressed below, we will affirm in part and reverse and render in part.

Following the death of Matthews, the insured, Massachusetts Mutual Life Insurance Company, (Mass Mutual), commenced this interpleader action and tendered the policy proceeds of $560,031.23 into court. Amy sought to recover the entire proceeds. Through her guardian ad litem, Savannah opposed the relief sought by Amy and seeking affirmative relief, sought to recover the policy proceeds as the only heir of Matthews. Upon receiving written stipulations, the trial court, without a jury, impressed a constructive trust to the extent of $50,000 for the use and benefit of Savannah, and awarded the balance of the policy proceeds to Amy, less certain attorneys' fees and costs.

The stipulations establish that in April 1995, while married to Amy, Matthews purchased policy number 9805868 from Mass Mutual. By the written application for insurance, Matthews designated "Amy Ahnise Matthews (spouse)" as the primary beneficiary, but Matthews did not designate an alternate or secondary beneficiary. Savannah is the only child born of the marriage of Matthews and Amy, who were divorced by order dated October 25, 1995. Among other things, the divorce decree (1) designated Amy as the sole managing conservator of Savannah, (2) made provisions for the payment of child support, (3) ordered that Mat-

thews purchase and maintain a life insurance policy naming Amy as the irrevocable beneficiary in the amount of $50,000.00, so long as child support was payable, and (4) awarded Matthews any and all existing policies of insurance insuring his life.

The stipulations also reflect that at the time of trial, it was unknown whether Savannah is the only child of Matthews. After the divorce was granted, the insurance agent met with Matthews at which time Matthews stated that he did not desire that any change be made to the beneficiary designation at that time. Later, on March 13, 1996, Matthews and the insurance agent had another discussion regarding policy beneficiary designation. Several options were discussed but Matthews made no request for a change of beneficiary at the second meeting. Matthews made no request that change forms be prepared and sent to Mass Mutual; and he did not make a change of beneficiary designation, in writing.

Matthews died as a result of a car accident on April 14, 1996. At the time of his death, he was not married. To the knowledge of the parties, he died intestate. At the time of trial, no administration of his estate had been commenced. Upon receipt of notice of the death of Matthews, after investigating the facts surrounding the death of Matthews and other matters concerning the policy, Mass Mutual filed this proceeding.

By point of error one, Savannah contends that there was no evidence as a matter of law that Matthews redesignated Amy as the beneficiary of the policy after the divorce, and by point of error two, contends that the evidence conclusively established that Matthews did not take the steps required to redesignate Amy as the beneficiary, as a matter of law. By point of error three, she asserts that the evidence was factually insufficient to support the finding that Matthews redesignated Amy as the beneficiary of the policy after the divorce. By point of error four, she contends that the finding that Matthews took the steps necessary to redesignate Amy as the beneficiary is against the great weight and preponderance of the evidence.

### Beneficiary Designation

Initially, we consider Amy's contention that the legal and factual insufficiency points of error were not preserved because Savannah did not file a motion for new trial. The case was submitted to the trial court without a jury upon stipulated facts. In such case, a motion for new trial is not required to preserve legal or factual insufficiency points on appeal. When a "matter of law point" is presented, the court considers all of the evidence, and if the converse of the finding is conclusively established, the point of error is sustained. Tex.R.App. P. 52; *Strickland v. Coleman,* 824 S.W.2d 188 (Tex.App.—Houston [1st Dist.] 1991, no writ).

In order to determine the proper beneficiary of the policy proceeds, we first consider the insurance policy and all relevant statutes. By statute, the term "beneficiary" is defined as "the person to whom a policy of insurance effected is payable." Tex. Ins.Code Ann. art. 3.01, § 9 (Vernon 1981).[1] Also, Texas Insurance Code Annotated Article 3.49–1, Section 2 (Vernon 1981), provides, in part, that any person may, "in the manner and to the extent permitted by the policy, designate **in writing** as the beneficiary or beneficiaries thereof any person...." (Emphasis added).[2] Texas Insurance Code Annotated Article 3.48 (Vernon Supp.1997), entitled Payments to **Designated** Beneficiaries, provides in part:

> Whenever any person shall procure the issuance of a policy of insurance ... and **designate** in **writing filed with the company** the **beneficiary** to receive the proceeds thereof, the company issuing such policy shall ... pay such proceeds becoming due on the death of the insured to the person so **designated** as beneficiary .... (emphasis added).[3]

---

1. References herein to article 3.01 are to Texas Insurance Code Annotated Article 3.01 (Vernon 1981).

2. References herein to article 3.49–1 are to Texas Insurance Code Annotated Article 3.49–1 (Vernon 1981).

3. References herein to article 3.48 are to Texas Insurance Code Annotated Article 3.48 (Vernon Supp.1997).

In 1987, the legislature enacted Texas Family Code Section 3.632 (Vernon 1993).[4] Subsection (b) of that section provides that upon divorce, a provision in the policy in favor of the insured's former spouse is not effective unless:

(1) the decree designates the insured's former spouse as the beneficiary;

(2) the insured redesignates the former spouse as the beneficiary after rendition of the decree; or

(3) the former spouse is designated to receive the proceeds in trust for, on behalf of, or for the benefit of a child or a dependent of either spouse.

Section 3.632 does not prescribe the procedure or method by which a beneficiary redesignation must be made. Because articles 3.49–1 and 3.48 of the Insurance Code and section 3.632 of the Family Code, both cover designations of beneficiaries of insurance policies, they are in *pari materia* and must be read and considered together. *Calvert v. Fort Worth National Bank*, 163 Tex. 405, 356 S.W.2d 918, 921 (1962). Also, since these three statutes were in effect at the time the policy was issued, they became a part of the contract and govern the transaction. *Wessely Energy Corporation v. Jennings*, 736 S.W.2d 624, 626 (Tex.1987).

■ The relevant portion of the insurance policy provided in part as follows:

> The Owner or any Beneficiary may be changed while the Insured is living. We do not limit the number of changes that may be made. To make a change, **a written request**, satisfactory to us, must be received at our Home Office. The change will take effect as of the date the request is **signed**, even if the Insured dies before we receive it. Each change will be subject to any payment we made or other action we took before receiving the request. (Emphasis added).

This policy provision requiring a signed written request conforms with the provisions of article 3.49–1, section 2. Because the decree of divorce did not designate Amy as the beneficiary of the policy, or designate Amy to receive the proceeds in trust for or on behalf of Savannah, by operation of law, the initial designation of Amy as the beneficiary was ineffective under section 3.632(b) unless Matthews effectively redesignated Amy as the beneficiary after the divorce.

Upon the rendition of the decree of divorce, the designation of Amy was rendered ineffective by operation of law. Because a secondary beneficiary was not designated, the policy proceeds were payable to Matthews's estate. To alter this disposition, a change or redesignation was required by the policy and permissive under article 3.49–1, section 2 of the Insurance Code and section 3.632 of the Family Code. A similar question was presented in I*n re The Group Life Insurance Proceeds of Curtis B. Mallory, Deceased*, 872 S.W.2d 800 (Tex.App.—Amarillo 1994, no writ). In *Mallory*, after suit was filed, the former wife who had been designated beneficiary, stipulated that section 3.632 rendered her designation ineffective; but because the statute did not render the contingent beneficiary designation to her children of her former marriage ineffective, we held that the designated former step-children were entitled to receive their portion of the policy benefits. *Id.* at 803.

■ Because section 3.632 does not prescribe a specific method to redesignate a former spouse, the provisions of the policy and article 3.49–1 requiring that a beneficiary designation be in writing, are controlling. The stipulated facts establish that Matthews did not document his intention to redesignate Amy as the beneficiary of the policy in writing. Applying the applicable standard of review, we hold that there was no evidence to support the finding that after the divorce, Matthews redesignated Amy as the beneficiary in writing.

■ We next consider whether the verbal statements of Matthews to the insurance agent are sufficient to support a finding of substantial compliance with the requirement that a redesignation be in writing. In *Mallo-*

---

**4.** References herein to section 3.632 are to Texas Family Code Annotated Section 3.632 (Vernon 1993).

*ry,* we also held that in the absence of documents evidencing an intention to change a designation, that substantial compliance with the policy provision could not be established. *Id.* at 803.

Before the adoption of section 3.632, the designated former spouse was awarded the policy proceeds. *See Tips v. Security Life & Accident Co.,* 144 Tex. 461, 191 S.W.2d 470 (1945). The former spouse and the mother of the deceased each claimed rights to the policy proceeds. While married, the insured designated his wife as the beneficiary of certain policies. After the divorce, the insured obtained the proper forms to change the beneficiary designations. Although Tips signed the proper forms naming his mother as the beneficiary, he never mailed the forms to the insurance company. After noting that the insured had requested and signed the proper forms, the court concluded that the insured had not even attempted compliance with the prescribed method to change the beneficiary, and affirmed the award to the former spouse. However, Matthews's statements to the insurance agent fall far short of the facts in *Tips.* In *Tips,* the insured had obtained and signed the proper forms. Two letters from Tips to the insurance company directing that it change the beneficiary to his mother were found by his brother along with the policies after his death. Here, however, Matthews did not write letters to Mass Mutual and did not request the proper forms to make a new designation or change.

■ Moreover, a change of beneficiary cannot even be effectively made by last will and testament of an insured. In *Creighton v. Barnes,* 152 Tex. 309, 257 S.W.2d 101 (1953), the insured had designated numerous beneficiaries of his life insurance policies. Later, by his last will and testament, which was admitted to probate, the insured expressly referenced the policies. Following a general devise of his estate to his wife, the will provided:

At the present time, I have life insurance as follows:

Jefferson Standard Life Insurance Company policy No. 727–036, for the sum of $10,000.00;

Jefferson Standard Life Insurance Company policy No. 806–705, for the sum of $15,000.00;

Farmers & Bankers Life Insurance company policy No. 50120, for the sum of $2500.00.

Each of these three policies is being made payable solely to my wife. This information is given for the identification of my life insurance. It is not to be considered a part of my estate.

Notwithstanding the specific description of each policy and the written declaration of the insured that each policy was being made payable solely to his wife, the Supreme Court held that the provisions of the will did not constitute effective beneficiary redesignations under the policy provisions. The Supreme Court stated:

To permit a change of beneficiary by will in disregard of provisions in a policy which have the same or similar requirements as to method of change, as these two policies of insurance here, would bring about much uncertainty as to payment of life insurance policies. Prompt payment of life insurance to those who are the beneficiaries is of inestimable importance to those who are left behind at the death of an insured. Delay and confusion resulting in unnecessary hardships should be avoided.

*Id.* at 104. This policy pronouncement has even more significance here because Amy asserts that the beneficiary redesignation was effected by the verbal statements of Matthews to the insurance agent.

■ After careful consideration of the undisputed facts, the policy provisions and applicable statutes, and applying the applicable standard of review, we conclude that the verbal statements of Matthews to the insurance agent were not effective under the policy provision and articles 3.49–1 and 3.48 to redesignate Amy as the beneficiary of the policy. Because Matthews did not designate a secondary or optional beneficiary, and there was no beneficiary entitled to payment upon his death, the policy proceeds were payable "to the estate of the Insured" (Matthews herein) in accordance with paragraph 16 of the application # 0594033842 which conforms with section 3.632 of the Family Code.

Consequently, we sustain points of error one and two. This determination renders consideration of points of error three and four unnecessary.

### Unknown Heirs

■ By point of error five, Savannah contends that the trial court erred in failing to appoint representatives for the unknown heirs and the estate of Matthews. However, Savannah did not present a verified plea in the trial court asserting a defect in parties as required by Texas Rule of Civil Procedure 93. Instead, she joined issues without raising the question in the trial court. As a result, any defect of parties, which was not fundamental error, was waived thereby foreclosing appellate review of the contention. *Taylor v. Shelton,* 772 S.W.2d 281 (Tex. App.—Amarillo 1989, writ denied). Accordingly, we overrule point of error five.

### Constructive Trust

■ By point of error six, Savannah complains of the trial court order impressing a "constructive trust" to the extent of $50,000 for her benefit, and urges that the trial court should have imposed an actual trust over the funds. The relevant portion of the order provides:

It is therefore ordered that AMY AHNISE SEVER, Defendant, is awarded the full amount of the life insurance policy in question, less the amounts listed below, **with $50,000.00 of that amount to be held in a constructive trust for the use and benefit of SAVANNAH AHNISE MATTHEWS, Co–Defendant.** (Emphasis added).

Savannah does not attack the conclusion of law that because Matthews failed to obtain a policy of life insurance as required by the decree of divorce, that a constructive trust in favor of Savannah should be impressed to the extent of $50,000.00; rather Savannah contends that the trust should be a legal trust and not a constructive trust.

Initially, we note that the constructive trust remedy is flexible and broad. Being remedial in its character, it has the function of redressing wrong or unjust enrichment. *First Nat. Bank of Amarillo v. Bauert,* 622

S.W.2d 464 (Tex.App.—Amarillo 1981, no writ). The imposition of the constructive trust by the trial court was indeed proper under these facts. *See Hudspeth v. Stoker,* 644 S.W.2d 92 (Tex.App.—San Antonio 1982, writ ref'd).

■ Although Savannah does not expressly refer to any statute, we construe her contention to be that the trial court should have created an express trust under Texas Property Code Annotated Section 142.001 (Vernon 1995). However, that statute is permissive and not mandatory. *Hanna v. Lott,* 888 S.W.2d 132 (Tex.App.—Tyler 1994, no writ). In *Rodriguez v. Gonzalez,* 830 S.W.2d 799 (Tex.App.—Corpus Christi 1992, no writ), the court held that once a legal guardian is appointed, that the legal guardian is entitled to administer the minor's funds. Here, there was no evidence that Amy, as the natural mother of Savannah, would waste Savannah's funds, or that Amy was otherwise disqualified or unsuitable to hold the funds as constructive trustee. Further, there was no claim or evidence that a legal guardianship would be necessary. Under Texas Probate Code Annotated Section 676(a) (Vernon Supp.1997), as the surviving natural guardian, Amy has the statutory preference to be appointed guardian of Savannah's estate, if a legal guardianship should become necessary. Accordingly, we overrule point of error six.

### Attorney's fees

■ By point of error seven, Savannah contends that the trial court erred in awarding only $2,331.30 as attorney's fees and expenses of the guardian ad litem. The statement attached to the stipulations reflected that the attorney's fees and costs incurred at the time of trial were $2,331.30, but the statement does not appear to include fees and expenses of the trial. By affidavit, the guardian ad litem estimated fees and expenses for an appeal. Under Texas Rule of Civil Procedure 173, the trial court may award an ad litem a reasonable fee for his or her services and the amount of the fees so awarded lies within the sound discretion of the trial court. Absent evidence showing a clear abuse of discretion by the trial court,

the award will not be overturned on appeal. *Brownsville–Valley Regional Medical Center, Inc. v. Gamez,* 894 S.W.2d 753 (Tex. 1995). Based upon the record, and because the ad litem approved the order as to form, we do not find that the award of $2,331.30 was a clear abuse of discretion. Further, since an award of ad litem fees for an appeal is improper if it is not conditioned upon whether the appeal is successful, the failure of the trial court to award attorney's fees on appeal was not error. *Rio Grande Valley Gas Co. v. Lopez,* 907 S.W.2d 622 (Tex. App.—Corpus Christi 1995, no writ). We overrule point of error seven.

Accordingly, the portions of the judgment (1) authorizing the payment of attorney's fees in the amount of $4,553.75 to the attorney for Mass Mutual, (2) authorizing the payment of attorney's fees in the amount of $2,331.30 to the guardian ad litem, and (3) impressing a constructive trust for the use and benefit of Savannah Ahnise Matthews, to the extent of $50,000.00, are affirmed. The portion of the judgment awarding the full amount of the life insurance policy proceeds, less the amounts listed above, to Amy Ahnise Sever, is reversed, and judgment is hereby rendered that the balance of the proceeds of the policy are payable to the estate of Gary A. Matthews, deceased.