**In the Matter of the MARRIAGE OF Robert Grant HARRISON and Julia Elizabeth Harrison.**

**No. 07–08–00486–CV.**

Court of Appeals of Texas, Amarillo, Panel A.

April 14, 2010.

Rehearing Overruled June 4, 2010.

Donald M. Hunt, Latrelle Bright Joy, Mullin Hoard & Brown, L.L.P., Lubbock, TX, for Appellee.

Aubrey J. Fouts, The Fouts Law Firm, Lubbock, TX, for Appellant.

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

## OPINION

MACKEY K. HANCOCK, Justice.

Appellant, Robert Grant Harrison (Robert), appeals from a judgment of divorce that granted a constructive trust in favor of intervenor, Mack Elston (Mack), in certain funds previously deposited into the registry of the court pursuant to an agreed order. Robert presents four issues for our consideration. First, Robert contends that the evidence was legally and factually insufficient to support 1) a finding of a confidential relationship between Robert and Mack, and 2) a finding that Robert committed fraud against Mack. The third issue requests that we render judgment confirming the unchallenged finding of fact that the monies in the registry of the court were his separate property. The fourth issue is a conditional issue which, because of our resolution of the other issues, we need not address.

### Factual and Procedural Background

Robert and Julia "Julie" Harrison (Julie) were married September 13, 2006. After the marriage, the couple moved into Robert's home in Winchester, Kentucky. On December 28, 2006, while Robert and Julie were out of town, the home and all its contents were destroyed by a fire. After living in a motel in Winchester for a period of time, the parties, who are both from Lubbock, Texas, decided to move back to Lubbock. They did so in January 2007 and decided to purchase a home in Lubbock. On February 8, 2007, they purchased a home for the sum of $434,000. At the closing of the purchase, $215,816.92 was paid in cash to the seller. This sum represented the proceeds from the insurance payment for the casualty loss to Robert's home in Kentucky. Additionally, Julie borrowed $10,000 from Mack, her father, for the escrow payment, and Robert borrowed $9,664.14 from his mother. The balance of the purchase price was made up by a note to a bank.

The parties immediately began spending money to furnish the house and for other personal expenses. The record reflects that, soon after the marriage, Julie moved her 401(k) that she had received in the property division of a previous divorce from TIAA CREF to Modern Woodmen of the World where the fund would be administered by Robert's brother. On February 16, 2007, Julie deposited the first $100,000 she had withdrawn from her 401(k) into her First United bank account. On March 1, 2007, Julie withdrew another $130,000 from her 401(k) and deposited it into her First United bank account.

At the time of each withdrawal, Julie executed a document with Modern Woodmen of the World that she did not desire to have federal income taxes withheld from the amount withdrawn. The testimony at trial was that Robert actually filled out the withdrawal forms. However, Julie admitted that she did sign each of the requests to withdraw funds from her 401(k).

After the funds were spent on personal items, Robert and Julie were faced with the task of putting the funds back in Julie's 401(k) or else suffering a substantial IRS penalty for early withdrawal. The possible tax ramifications of the withdrawals led Robert and Julie to contact Mack about furnishing the funds to replenish the 401(k) account. Precisely what was said by whom during the conversation(s) regarding funds for the 401(k) account was hotly disputed at the trial. However, what is clear is that, following the conversations, Mack furnished $100,000 on April 16, 2007,

in the form of two checks for $50,000 each. These funds were placed into Julie's 401(k) on April 23, 2007. On May 27, 2007, Mack furnished another $100,000 to replenish Julie's 401(k). Those funds were deposited into Julie's 401(k) on June 1, 2007.

During the trial, Julie initially testified that Robert told her he would repay the money that Mack had furnished to replenish her 401(k) out of the proceeds of the insurance from the casualty loss in Kentucky. Later, during cross-examination, Julie testified that the $200,000 in loans from Mack were to be paid out of proceeds from the payment for the contents destroyed in the Kentucky fire. Mack testified that he expected to be repaid out of the proceeds of the insurance but did not specify any portion of the Kentucky casualty loss from which he was to be repaid.

Robert filed for divorce from Julie on June 29, 2007. Julie answered the petition for divorce on July 6, 2007. On September 4, 2007, the agreed temporary orders were entered that required the proceeds from the sale of the parties' Lubbock home to be placed into the registry of the court. On April 29, 2008, Mack filed a petition in intervention alleging that Robert had been guilty of committing fraud against him and breaching a fiduciary duty owed to him. Mack sought damages in the amount of $200,000 and, requested that the trial court impose a constructive trust in favor of Mack on the $217,239.74 deposited into the registry of the court. Trial was to the court on June 10–11, 2008. At the conclusion of the testimony, the trial court took the case under advisement and, on July 3, 2008, sent a letter to counsel advising them of his decision. A final decree was prepared and entered on October 6, 2008. Subsequently, based upon Robert's request, the trial court entered its Findings of Fact and Conclusions of Law on November 12, 2008. This appeal followed.

Through his issues, Robert contends that some of the trial court's findings of fact were based upon legally or factually insufficient evidence. Additionally, Robert contends that this court should render judgment that the entire sum held in the registry of the court should be paid over to him as his separate property. Lastly, Robert has an alternative issue, concerning economic contribution, should we decide to remand this matter.

## Standards of Review

As this matter was tried without a jury and the trial court filed findings of fact and conclusions of law, we treat those findings with the same force and dignity as a jury's verdict upon jury questions. *See Latch v. Gratty, Inc.*, 107 S.W.3d 543, 545 (Tex. 2003) (citing *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994)). The trial court's findings of fact are reviewed for legal and factual sufficiency of the evidence under the same standards as applied to jury findings. *See Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996).

### Legal Sufficiency

In reviewing a challenge to the legal sufficiency of the evidence, we must credit evidence that supports the verdict if a reasonable fact finder could have done so and disregard contrary evidence unless a reasonable fact finder could not have done so. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 115 (Tex.2009). Challenges to the legal sufficiency of the evidence will be sustained when 1) there is a complete absence of evidence of a vital fact, 2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, 3) the evidence offered to prove a vital fact is no more than a scintilla, or 4) the evidence conclusively establishes the opposite of the vital fact. *Id.* If the evidence is so

weak as to do no more than create a mere surmise or suspicion, then that evidence does not exceed a scintilla. *Id.*

Factual Insufficiency

In a factual sufficiency review, we must review all of the evidence both for and against the finding of the trial court. *See Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989). After considering all of the evidence in a neutral light, if we find that the evidence supporting the finding is so weak that it does not support the finding or is so against the great weight of the evidence that the finding is clearly wrong and unjust, then we will reverse. *See Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986).

Conclusions of Law

The trial court's conclusions of law are not reviewable from an evidentiary standpoint, however, we may review the conclusions drawn from the facts to determine their correctness. *See Ashcraft v. Lookadoo,* 952 S.W.2d 907, 910 (Tex.App.-Dallas 1997, writ denied) (en banc).

## Analysis

■ In order to be entitled to a constructive trust, Mack must prove the following elements:

(1) Breach of an informal relationship of special trust or confidence arising prior to the transaction in question, or actual fraud;

(2) Unjust enrichment of the wrongdoer;

(3) Tracing to an identifiable res.

*See Mowbray v. Avery,* 76 S.W.3d 663, 681 n. 27 (Tex.App.-Corpus Christi 2002, pet. denied). For the purposes of our analysis, we will assume that the evidence is sufficient to prove that there was fraud[1] and unjust enrichment of Robert. We will concentrate our analysis on the third element, tracing to an identifiable res.

The trial court entered a finding that the $217,239.74 that was deposited into the registry of the court originated from the casualty loss suffered by Robert to his separate property home in Kentucky. The testimony and exhibits entered into evidence confirm that finding. However, that same evidence proves that the money placed into the registry of the court was initially received by Robert as payment for the loss of his Kentucky home and became part of the downpayment for the home the parties purchased on February 8, 2007. The trial court also found that Robert had promised to repay the advance of funds made by Mack out of the proceeds of the casualty insurance on the residential property that Robert owned in Kentucky. However, there is no finding as to when that promise was made. The documentary evidence at trial reflects that a deposit for $100,000 was made into the community bank account of Robert and Julie on April 14, 2007. The record further reflects that, on April 23, 2007, a check for $100,000 was written on that same bank account to Julie's 401(k) account. On May 22, 2007, there is a $100,000 deposit into the community bank account with the notation that it was from Mack and Doris Elston. On June 1, 2007, a second check was written from the community bank account payable to Julie's 401(k) in the corresponding amount of $100,000.

Mack's testimony did not pinpoint the date when he had the conversation(s) with Robert about repayment of the loan being made from proceeds of the casualty insurance. However, Mack testified the conversation(s) took place after Robert had brought over the $32,000 check that Mack

---

1. We make no assumption regarding the sufficiency of the evidence to prove breach of an informal relationship of special trust or confidence.

testified was intended as repayment for money previously loaned to Julie. That check was drawn on the community bank account on March 7, 2007. Therefore, the evidence suggests that sometime between March 7, 2007 and April 14, 2007, when the first $100,000 loan was deposited into the couple's bank account, Robert spoke to Mack about advancing the first $100,000 to repay Julie's 401(k). Therefore, we can deduce that, at the time Robert made any statement(s) about repaying from the proceeds of insurance he was not referring to the original payment for the structure loss since those funds had previously been paid and used to purchase the community home in Lubbock.

■ Using the foregoing factual findings and evidence from the trial, we begin analyzing the tracing issue by noting that, when a party attempts to impose a constructive trust over funds, "... the trust fund must be clearly traced into other specific property; that nothing must be left to conjecture, and that no presumptions, except the usual and necessary deductions from facts proven, can be indulged." *Meyers v. Baylor Univ.*, 6 S.W.2d 393, 394 (Tex.Civ.App.-Dallas 1928, writ ref'd.) The proposition regarding the tracing of funds into the trust was reaffirmed by the Texas Supreme Court in *Wilz v. Flournoy*, 228 S.W.3d 674, 676 (Tex.2007). The foregoing rule is subject to modification when the trustee, the wrongdoer, mingles the trust funds with his own property or invests it in such a manner that the trust funds can no longer be separated or identified. *See Meyers*, 6 S.W.2d at 395. The *Wilz* opinion states that, once the burden of tracing has been met, the entire property will be treated as subject to the trust, except insofar as the trustee can distinguish and separate that which is his own. *Wilz*, 228 S.W.3d at 676

(citing *Eaton v. Husted*, 141 Tex. 349, 172 S.W.2d 493, 498–99 (1943)).

■ The record demonstrates that the property on which the trial court imposed the constructive trust had already been converted from the proceeds of the casualty loss to the separate property home in Kentucky into the downpayment for the home in Lubbock. The closing on the purchase of the Lubbock residence occurred on February 8, 2007. According to Mack's own testimony, he did not discuss the loan of the money to Robert and Julie until some date after March 7, 2007. Therefore, Mack, as proponent of the constructive trust, is not able to trace the funds he claimed were wrongfully procured into the specific property that the trial court impressed with the constructive trust.

Mack cites the court to a number of cases he contends support the imposition of the constructive trust at issue. However, the cases cited by Mack do not support his contention. In the case of *In re Nolder*, 48 S.W.3d 432, 434 (Tex.App.-Texarkana 2001, no pet.), the stock that the trust was traced to was in existence and the proceeds from the stock options ordered divided between the parties by the court could be traced directly to the new stock. In our fact scenario, the property cannot be traced back to Mack's loan or the funds that were promised to be used for repayment. In *Hudspeth v. Stoker*, 644 S.W.2d 92, 94 (Tex.App.-San Antonio 1982, writ ref'd.), the facts involved a replacement insurance policy and a violation of a court order. Although the *Hudspeth* court talked at length about the general considerations of equity that give rise to the remedy of a constructive trust, the fact remains that the court there could trace the promise broken, the court order, directly into the replacement policy. *Id.* at

95–96. Such is not the state of the evidence before us.

Mack also places great faith in this court's decision in *Sever v. Mass. Mut. Life Ins. Co.*, 944 S.W.2d 486, 492 (Tex. App.-Amarillo 1997, writ denied). However, the issues addressed in *Sever* were beneficiary designation and whether an actual trust, as opposed to a constructive trust, should have been imposed over the funds at issue. *Id.* The issue litigated at trial and on appeal did not involve tracing of funds into a constructive trust. In *In re Loftis*, 40 S.W.3d 160, 165 (Tex.App.-Texarkana 2001, no pet.), the issue was a resulting trust and the res was the property purchased; the case did not involve the tracing of funds into a constructive trust. In *Zapata Corp. v. Zapata Gulf Marine Corp.*, 986 S.W.2d 785, 786 (Tex.App.-Houston [1st Dist.] 1999, no pet.), and in *Pinnacle Data Servs., Inc. v. Gillen*, 104 S.W.3d 188, 193–94 (Tex.App.-Texarkana 2003, no pet.), there were no issues regarding the tracing of funds into a constructive trust. The same is true for the case of *Blankenship v. Citizen's Nat'l Bank of Lubbock*, 449 S.W.2d 77, 79 (Tex.Civ.App.-Amarillo 1970, writ ref'd n.r.e.), in which there was never an issue of tracing raised by any of the litigants. All of these cases stand for a general proposition that constructive trusts are used to right a wrong or prevent unjust enrichment, but none of them involve tracing of funds. Finally, it should be noted that the relief Mack seeks, the imposition of a constructive trust, does not request that the trial court trace the funds Mack loaned. Had he done so, we would be discussing imposition of a constructive trust on Julie's 401(k).

We, therefore, hold that there is a complete absence of a vital fact, the tracing of the funds to an identifiable res. *See Mowbray*, 76 S.W.3d at 681 n. 27. The absence of evidence regarding an element of Mack's case results in the evidence being legally insufficient. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 299 S.W.3d at 115. Accordingly, we reverse the judgment imposing a constructive trust to benefit Mack and render judgment that the funds on deposit with the court be paid over to Robert pursuant to the trial court's finding of fact and conclusion of law that the same are his separate property. In all other respects, the trial court's judgment is affirmed.

### Conclusion

The judgment of the trial court is reversed and rendered in part and affirmed in part.