# NO. 12-13-00347-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF* | § | *APPEAL FROM THE* |
| *J. T., B. W. AND E. T.,* | § | *COUNTY COURT AT LAW* |
| *CHILDREN* | § | *ANDERSON COUNTY, TEXAS* |

## MEMORANDUM OPINION

C.T. appeals the termination of her parental rights. In two issues, C.T. challenges the order of termination. We affirm.

## BACKGROUND

C.T. is the mother of three children: J.T., born August 14, 2001; B.W., born July 11, 2002; and E.T., born December 29, 2003. On September 14, 2012, the Department of Family and Protective Services (the Department or CPS) filed an original petition for protection of J.T., B.W., and E.T., for conservatorship, and for termination of C.T.'s parental rights. The Department was appointed temporary managing conservator of the children, and C.T. was appointed temporary possessory conservator.

At the conclusion of the trial on the merits, the trial court found by clear and convincing evidence that C.T. had engaged in one or more of the acts or omissions necessary to support termination of her parental rights. Specifically, the court found that C.T. had failed to comply with a court order that established the actions necessary to obtain the return of her children. The trial court further found that termination of the parent-child relationships was in the children's best interest.

Based on these findings, the trial court ordered that the parent-child relationships between C.T. and each of the three children be terminated. This appeal followed.

### TERMINATION OF PARENTAL RIGHTS

Involuntary termination of parental rights implicates fundamental constitutional rights. *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.–Austin 2000), *pet. denied per curiam*, 53 S.W.3d 684 (Tex. 2001); *In re J.J.*, 911 S.W.2d 437, 439 (Tex. App.–Texarkana 1995, writ denied). Because a termination action "permanently sunders" the bonds between a parent and child, the proceedings must be strictly scrutinized. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976); *In re Shaw*, 966 S.W.2d 174, 179 (Tex. App.–El Paso 1998, no pet.).

Section 161.001 of the family code permits a court to order termination of parental rights if two elements are established. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2013); *In re J.M.T.*, 39 S.W.3d 234, 237 (Tex. App.–Waco 1999, no pet.). First, the parent must have engaged in any one of the acts or omissions itemized in the first subsection of the statute. TEX. FAM. CODE ANN. § 161.001(1) (West Supp. 2013); *Green v. Tex. Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 213, 219 (Tex. App.–El Paso 2000, no pet.); *In re J.M.T.*, 39 S.W.3d at 237. Second, termination must be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(2) (West Supp. 2013); *In re J.M.T.*, 39 S.W.3d at 237. Both elements must be established by clear and convincing evidence, and proof of one element does not alleviate the petitioner's burden of proving the other. TEX. FAM. CODE ANN. § 161.001; *Wiley*, 543 S.W.2d at 351; *In re J.M.T.*, 39 S.W.3d at 237.

The clear and convincing standard for termination of parental rights is both constitutionally and statutorily mandated. TEX. FAM. CODE ANN. § 161.001; *In re J.J.*, 911 S.W.2d at 439. Clear and convincing evidence means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2008). The burden of proof is upon the person seeking the deprivation of parental rights. *In re J.M.T.*, 39 S.W.3d at 240.

### STANDARD OF REVIEW

"In a legal sufficiency review, a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable

fact finder could do so, and we must disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id*.

The appropriate standard for reviewing a factual sufficiency challenge to the termination findings is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *In re C.H.*, 89 S.W.3d 17, 18-19 (Tex. 2002). In determining whether the fact finder has met this standard, an appellate court considers all the evidence in the record, both that in support of and contrary to the trial court's findings. *See id*. at 27-29. Further, "[a] court of appeals should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266. "[T]he trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony." *In re S.J.G.*, 124 S.W.3d 237, 246 (Tex. App.–Fort Worth 2003, pet. denied).

The trial court's findings of fact and conclusions of law have the same force and dignity as a jury's verdict upon jury questions. *See Latch v. Gratty, Inc.*, 107 S.W.3d 543, 545 (Tex. 2003) (per curiam) (citing *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994)). We review the trial court's findings of fact for legal and factual sufficiency of the evidence under the same standards as applied to jury findings. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). The trial court's conclusions of law are not reviewable from an evidentiary standpoint; however, we may review the conclusions drawn from the facts to determine their correctness. *See In re Marriage of Harrison*, 310 S.W.3d 209, 212 (Tex. App.—Amarillo 2010, pet. denied) (citing *Ashcraft v. Lookadoo*, 952 S.W.2d 907, 910 (Tex. App.—Dallas 1997, writ denied) (en banc)).

## BEST INTEREST OF THE CHILDREN

In two issues, C.T. argues that the evidence is legally and factually insufficient to support a finding that termination of her parental rights was in the best interest of the children. In determining the best interest of the child, a number of factors are considered, including "(A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions

of the parent that may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent." ***Holley v. Adams***, 544 S.W.2d 367, 371-72 (Tex. 1976).

This list is not exhaustive, but simply indicates considerations that have been or could be pertinent. ***Id***. The best interest of the child, however, does not require proof of any particular set factors. ***In re D.M.***, 58 S.W.3d at 814. The ***Holley*** factors focus on the best interest of the child, not the parent's best interest. ***Dupree v. Tex. Dep't of Protective & Regulatory Servs.***, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). We apply the ***Holley*** factors below.

**Analysis**

The Department became involved with C.T. and the children in May 2012. At that time, the children were placed with C.T.'s mother. Soon thereafter, the Department investigated an allegation that C.T.'s mother's boyfriend had touched B.W. inappropriately and that C.T. knew about it but failed to inform law enforcement. The children were subsequently removed from the grandmother's home and placed with other relatives. After keeping the children for about a year, the other relatives refused to keep them any longer, and the children were placed in foster care.

According to counseling notes in the record, C.T. had a prior CPS case in 2004. That case involved an incident in which C.T. left the children alone and was charged with abandonment. According to further notes in the record, signed by C.T., the charge resulted in a criminal conviction.

When the Department became involved in May 2012, C.T. tested positive for methamphetamines. In July 2012, she tested positive for hydrocodone. In August, October, and December 2012, she tested negative for drugs. On January 10, 2013, C.T. left the testing facility before a hair follicle test could be performed. Six days later, she failed to appear for a hair follicle test. One month later, C.T. ignored requests by the Department for drug testing. On February 21, 2013, she failed to appear for a drug test. She tested positive in April, negative in May, and positive for amphetamines and methamphetamines in June 2013. After that date, C.T. did not maintain contact with the Department, and the Department was unable to request any more drug tests.

In October 2012, a family plan of service was developed with C.T.'s participation. The plan required C.T. to participate in a drug and alcohol assessment, which she did not do. C.T. attended required substance abuse counseling sessions until January 2013, but then she stopped

attending and was unsuccessfully discharged. C.T. was also required to consistently attend AA/NA support group meetings. She provided proof of attending twenty-four such meetings from August 14, 2012, to October 4, 2012. She completed a Celebrate Recovery program in the spring of 2013. The day before she completed the program, however, she tested positive for methamphetamines. C.T. also completed only nine of thirty required parenting workbook units. Furthermore, the Department caseworker testified that C.T. failed to meet the requirement of not associating with known criminals or persons using illegal drugs, as well as the requirement of having anyone who lived with her cleared by the Department first. C.T. allowed a boyfriend to live with her without notifying the Department.

Because of her drug use during the pendency of the case, C.T. was unable to consistently visit the children. She was required to have semi-monthly visits. She had ten visits before March 7, 2013. At that time, the trial court ordered that she must provide a negative drug test before visiting with the children. She provided one negative drug test and visited the children in May 2013. Subsequently, she tested positive for methamphetamines and made no further effort to visit the children.

C.T.'s drug use also prevented her from being able to participate in family therapy with the children. She was required to provide consecutive negative drug tests in order to participate. This did not occur.

C.T. failed to maintain steady employment and housing during the pendency of the case. According to conflicting evidence in the record, C.T. provided proof of employment for only six or sixteen weeks out of a six month time period. She obtained a residence in January 2013 but was evicted in May 2013. She subsequently moved and failed to keep the Department informed of her whereabouts.

Along with her illegal drug use during the pendency of this case, C.T. had other criminal history. She was arrested in March 2013 for theft by check and in April 2013 for driving with an expired license. Additionally, C.T. was refused admittance to a required Awake program because she was an offender in an assault case. C.T. failed to attend several hearings in this case, including the termination hearing. She called her caseworker prior to the termination hearing and informed her that she would not be in attendance because there were warrants for her arrest. At that time, she expressed that she did not want her rights terminated and that she wanted the children placed with a particular relative.

At the time of trial, the children were placed in a stable and positive foster home with an older couple who were correctional officers and had prior experience raising foster children. The foster parents provided good, consistent structure for the children. The children were doing well in school and were up to date on all of their medical, dental, and psychological care. The foster parents were meeting the children's needs. According to the CASA volunteer, during his last three or four visits with the children, the children had not expressed a desire to be with C.T. or even mentioned her.

Viewing the evidence in the light most favorable to the finding, and applying the ***Holley*** factors, we conclude that a reasonable fact finder could have formed a firm belief or conviction that termination of C.T.'s parental rights was in the best interest of the children. However, some of the evidence weighs against the finding. C.T. completed her psychological evaluation as required, completed Celebrate Recovery, attended counseling sessions until early 2013, attended twenty-four AA/NA meetings through October 2012, attended all hearings in the case until July 2013, submitted a health and social history form, and tested negative on four drug tests. Furthermore, the CASA volunteer in the case testified that B.W. was having "a little bit of trouble" accepting the structure in the foster placement. Although there is some evidence that conflicts with the trial court's finding, this evidence is not so significant that a reasonable trier of fact could not have reconciled this evidence in favor of its finding and formed a firm belief or conviction that terminating C.T.'s parental rights was in the best interest of the children.

Therefore, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of C.T.'s parental rights is in the best interest of the children. Accordingly, we overrule C.T.'s first and second issues.

### DISPOSITION

Having overruled both of C.T.'s issues, we ***affirm*** the judgment of the trial court.

**BRIAN HOYLE**
Justice

Opinion delivered April 23, 2014.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

6



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**APRIL 23, 2014**

**NO. 12-13-00347-CV**

**IN THE INTEREST OF J. T., B. W. AND E. T., CHILDREN**

Appeal from the County Court at Law

of Anderson County, Texas (Tr.Ct.No. CCL-12-13711)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that the decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*