# NO. 12-14-00031-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

|  |  |  |
|---|---|---|
| *IN THE INTEREST OF K. B.,* | § | *APPEAL FROM THE 173RD* |
| *A CHILD* | § | *JUDICIAL DISTRICT COURT* |
|  | § | *HENDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

D.B. appeals the termination of his parental rights. In three issues, he challenges the order of termination. We affirm.

## BACKGROUND

D.B. is the father of K.B., born February 5, 2005. On October 8, 2012, the Department of Family and Protective Services (the Department or CPS) filed an original petition for protection of K.B., for conservatorship, and for termination of D.B.'s parental rights. The Department was appointed temporary managing conservator of K.B., and D.B. was appointed temporary possessory conservator.

At the conclusion of the trial on the merits, the trial court found that the Department had shown grounds for termination of D.B.'s parental rights under subsection 161.001(1)(N) of the Texas Family Code. The trial court further found that termination of the parent-child relationship was in K.B.'s best interest.

Based on these findings, the trial court ordered that the parent-child relationship between D.B. and K.B. be terminated. This appeal followed.

## TERMINATION OF PARENTAL RIGHTS

Involuntary termination of parental rights implicates fundamental constitutional rights. *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.–Austin 2000), *pet. denied per curiam*, 53

S.W.3d 684 (Tex. 2001); *In re J.J.*, 911 S.W.2d 437, 439 (Tex. App.–Texarkana 1995, writ denied). Because a termination action "permanently sunders" the bonds between a parent and child, the proceedings must be strictly scrutinized. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976); *In re Shaw*, 966 S.W.2d 174, 179 (Tex. App.–El Paso 1998, no pet.).

Section 161.001 of the family code permits a court to order termination of parental rights if two elements are established. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2013); *In re J.M.T.*, 39 S.W.3d 234, 237 (Tex. App.–Waco 1999, no pet.). First, the parent must have engaged in any one of the acts or omissions itemized in the first subsection of the statute. TEX. FAM. CODE ANN. § 161.001(1) (West Supp. 2013); *Green v. Tex. Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 213, 219 (Tex. App.–El Paso 2000, no pet.); *In re J.M.T.*, 39 S.W.3d at 237. Second, termination must be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(2) (West Supp. 2013); *In re J.M.T.*, 39 S.W.3d at 237. Both elements must be established by clear and convincing evidence, and proof of one element does not alleviate the petitioner's burden of proving the other. TEX. FAM. CODE ANN. § 161.001; *Wiley*, 543 S.W.2d at 351; *In re J.M.T.*, 39 S.W.3d at 237.

## STANDARD OF REVIEW

The clear and convincing standard for termination of parental rights is both constitutionally and statutorily mandated. TEX. FAM. CODE ANN. § 161.001; *In re J.J.*, 911 S.W.2d at 439. Clear and convincing evidence means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2008). The burden of proof is on the person seeking the deprivation of parental rights. *In re J.M.T.*, 39 S.W.3d at 240.

"In a legal sufficiency review, a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so, and we must disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id*.

The appropriate standard for reviewing a factual sufficiency challenge to the termination findings is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *In re C.H.*, 89 S.W.3d 17, 18-19 (Tex.

2

2002). In determining whether the fact finder has met this standard, an appellate court considers all the evidence in the record, both that in support of and contrary to the trial court's findings. *See id*. at 27-29. Further, "[a] court of appeals should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266. "[T]he trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony." *In re S.J.G.*, 124 S.W.3d 237, 246 (Tex. App.–Fort Worth 2003, pet. denied).

The trial court's findings of fact and conclusions of law have the same force and dignity as a jury's verdict upon jury questions. *See Latch v. Gratty, Inc.*, 107 S.W.3d 543, 545 (Tex. 2003) (per curiam) (citing *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994)). We review the trial court's findings of fact for legal and factual sufficiency of the evidence under the same standards as applied to jury findings. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). The trial court's conclusions of law are not reviewable from an evidentiary standpoint; however, we may review the conclusions drawn from the facts to determine their correctness. *See In re Marriage of Harrison*, 310 S.W.3d 209, 212 (Tex. App.—Amarillo 2010, pet. denied) (citing *Ashcraft v. Lookadoo*, 952 S.W.2d 907, 910 (Tex. App.—Dallas 1997, writ denied) (en banc)).

## TERMINATION UNDER SECTION 161.001(1)(N)

In his first and second issues, D.B. argues that the evidence is legally and factually insufficient to support the trial court's finding of grounds for termination under subsection 161.001(1)(N).

**Applicable Law**

The court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has

> constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months, and: (i) the department or authorized agency has made reasonable efforts to return the child to the parent; (ii) the parent has not regularly visited or maintained significant contact with the child; and (iii) the parent has demonstrated an inability to provide the child with a safe environment.

TEX. FAM. CODE ANN. § 161.001(1)(N).

The Department's reasonable-efforts requirement may be satisfied by creating and attempting to implement a service plan for the parent. *See In re K.M.B.*, 91 S.W.3d 18, 25 (Tex. App.—Fort Worth 2002, no pet.). A parent denied visitation by a court order may nonetheless be found to have failed to regularly visit or maintain significant contact with a child, especially when the level of contact was the same before as after the order took effect. *See In re N.R.T.*, 338 S.W.3d 667, 673-74 (Tex. App.—Amarillo 2011, no pet.). Multiple factors may affect the determination of the parent's ability to provide a safe environment for the child, including the stability of the parent's housing and employment, and whether the parent has complied with recommended services. *In re J.J.O.*, 131 S.W.3d 618, 629-30 (Tex. App.—Fort Worth 2004, no pet.).

## Analysis

This case began in October 2012 and was the second CPS case involving D.B. and K.B. in less than three years. In the first case, D.B. completed the required services, the termination suit was dismissed, and K.B. was returned to his care. Within months, D.B. went to jail on charges of possession of a controlled substance and unlawful possession of a firearm by a felon. While D.B. was incarcerated, K.B.'s mother, B.B., abandoned her with relatives, who then left her in the care of CPS.

Within a few days, CPS contacted D.B. in jail. Shortly thereafter, D.B. was released from jail and was served with citation in the case. After his release, D.B. made one contact with CPS. Thereafter, CPS personnel made attempts but were unable to locate D.B. for nine months.

A CPS caseworker happened to find D.B. at B.B.'s residence when he paid her a surprise visit. After speaking with the caseworker, D.B. began working services under the family service plan. Over the next six months, he successfully completed many of the services. He did not, however, attend any AA/NA support group meetings as was recommended by his individual and substance abuse counselors.

At the time of trial, D.B. had not been in contact with K.B. since before the start of the case. He testified that "throughout this case" he had mentioned seeing and communicating with K.B. He admitted, however, that he did not immediately contact CPS upon his release from jail, and that he was back in jail when he contacted them several months later. The caseworker testified that D.B.'s first request for visitation occurred eleven months into the case. At that time, K.B.'s counselor recommended that visitation not occur. Regarding other forms of communication, D.B. testified that he had never sent any letters, cards, or gifts to K.B.

During the case, D.B. considered his parents' house his primary residence. He also stayed other places, including a girlfriend's residence and the county jail. While he was working services, D.B. maintained employment, maintained contact with CPS, and passed all of his drug tests. D.B.'s substance abuse counselor nevertheless testified that there was a high probability of relapse for him because of his failure to participate in a support group and twelve-step program, and because he admittedly smoked marijuana during the case but failed to recognize this as a relapse. His individual counselor advised against placing a child in D.B.'s care because of his criminal history, substance abuse history, untreated bipolar tendencies, and self-serving attitude regarding relationships.

## Conclusion

Viewing the evidence in the light most favorable to the finding, we conclude that the trial court reasonably could have determined that D.B. constructively abandoned K.B. who had been in the managing conservatorship of the Department for not less than six months, that the Department had made reasonable efforts to return K.B. to D.B., that D.B. did not regularly visit or maintain significant contact with K.B., and that D.B. demonstrated an inability to provide K.B. with a safe environment. *See In re K.M.B.*, 91 S.W.3d at 25; *In re N.R.T.*, 338 S.W.3d at 673-74; *In re J.J.O.*, 131 S.W.3d at 629-30.

Furthermore, although some of the evidence conflicts with the trial court's finding, this evidence is not so significant that a reasonable trier of fact could not have reconciled it in favor of its finding and formed a firm belief or conviction that grounds for termination of D.B.'s parental rights exist under subsection 161.001(1)(N). Therefore, we hold that the evidence is legally and factually sufficient to support the trial court's finding of grounds for termination. We overrule D.B.'s second issue and the portion of his first issue regarding subsection 161.001(1)(N).

## BEST INTEREST OF THE CHILD

In his first and third issues, D.B. argues that the evidence is legally and factually insufficient to support a finding that termination of his parental rights was in K.B.'s best interest. In determining the best interest of the child, a number of factors are considered, including "(A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals or by the agency

5

seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent." ***Holley v. Adams***, 544 S.W.2d 367, 371-72 (Tex. 1976).

This list is not exhaustive, but simply indicates considerations that have been or could be pertinent. ***Id.*** The best interest of the child, however, does not require proof of any particular set factors. ***In re D.M.***, 58 S.W.3d at 814. The ***Holley*** factors focus on the best interest of the child, not the parent's best interest. ***Dupree v. Tex. Dep't of Protective & Regulatory Servs.***, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). We apply the ***Holley*** factors below.

## Analysis

This was the second case in less than three years in which K.B. was placed in foster care. In this case, K.B. was placed in four foster homes before she was moved into one licensed to provide the level of care she needs for her behavioral issues. The home was not an adoptive home, but K.B.'s needs were being met and she was slowly making progress with her behavioral and speech issues. She remained there for the last ten months of the case.

Meanwhile, D.B. changed residences multiple times during the case as well. He claimed at trial that his parents' house had been his residence for the past year. When K.B. went into foster care, however, D.B. was in jail. He also went to jail a second time during the case. D.B.'s individual counselor, Bonny McBride, testified that on one occasion, he told her he was staying at his girlfriend's uncle's house and would move in with his parents only as a last resort because they lacked space for him. When asked at trial whether he had stayed other places as well, he responded, "I take a backpack with me."

Regarding D.B.'s mental status, there was testimony that he was previously diagnosed with attention deficit disorder, obsessive compulsive disorder, and bipolar disorder. While D.B. had been treated with medication for bipolar disorder in the past, there was no indication of any treatment for several years. McBride had recommended to D.B. that he visit the Andrews Center because of his bipolar diagnosis, but he never indicated to her that he had done so. D.B., on the contrary, stated at trial that he had begun seeking services at the Andrews Center even before the recommendation and was on a waiting list.

McBride testified that in addition to the prior diagnoses, D.B. exhibited antisocial behavior. She stated she did not recommend that a child be placed in his care. Her concerns were his criminal history, substance abuse history, untreated bipolar tendencies, and self-serving attitude

6

toward relationships.  Notably, D.B. admitted at trial that he sent a text message to B.B. in 2012, stating, "Got my dope, I have my protection, and I'm going down in a blaze of glory." He also admitted that this message meant that he "wasn't going to be caught."

Regarding substance abuse, D.B. testified that he does not believe he has a drug problem. He admitted, however, to testing positive for methamphetamine in the prior CPS case and to pleading guilty to possession of methamphetamines in 2013.  He told his substance abuse counselor, Stephanie Teel, that he does not attend AA/NA support group meetings because being around other drug users might trigger his own use.  D.B. testified that his family and friends are his support group "for life, for living."  Teel testified that relapse was highly likely for D.B. because he was not participating in an AA/NA support group or working a twelve-step program, and because he admitted recent marijuana use but failed to recognize it as a relapse.

Viewing all of the evidence in the light most favorable to the finding, a reasonable fact finder could have formed a firm belief or conviction that termination of D.B.'s parental rights was in the best interest of the child.  Moreover, although there is some evidence that conflicts with the trial court's finding, this evidence is not so significant that a reasonable trier of fact could not have reconciled this evidence in favor of its finding and formed a firm belief or conviction that terminating D.B.'s parental rights was in the best interest of the child.

Therefore, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of D.B.'s parental rights was in the best interest of the child. Accordingly, we overrule D.B.'s third issue and that portion of his first issue regarding the best interest of the child.

**DISPOSITION**

Having overruled all of D.B.'s issues, we ***affirm*** the judgment of the trial court.

**SAM GRIFFITH**
Justice

Opinion delivered July 9, 2014.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JULY 9, 2014**

**NO. 12-14-00031-CV**

**IN THE INTEREST OF K. B., A CHILD**

Appeal from the 173rd District Court

of Henderson County, Texas (Tr.Ct.No. 2010A-0747)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Sam Griffith, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*