**Royce E. BLANKENSHIP et al., Appellants,**

v.

**The CITIZENS NATIONAL BANK OF LUBBOCK, Appellee.**

No. 7988.

Court of Civil Appeals of Texas.

Amarillo.

Dec. 8, 1969.

Rehearing Denied Jan. 12, 1970.

Ungerman, Hill, Ungerman & Angrist and Vernon O. Teofan, Dallas, for appellants.

McWhorter, Cobb & Johnson and Charles L. Cobb, Lubbock, for appellee.

JOY, Justice.

Suit to reform a collateral security agreement contending mutual mistake or fraud by defendant. From judgment for plaintiff bank, defendant has appealed. Affirmed.

Over a period of months prior to July, 1967, Royce Blankenship borrowed more than $600,000.00 from Citizens National Bank of Lubbock, Texas. To secure the payment of that indebtedness, Royce Blankenship pledged to Citizens by a separate collateral agreement on July 10, 1967, one share of common capital stock in Wallace Theaters of Crosbyton, Inc. By a letter dated July 10, 1967, Royce Blankenship represented to Citizens that there were "only two (2) shares of common capital stock outstanding in Wallace Theaters of Crosbyton, Inc. Wesley B. Blankenship owns one (1) share and Royce E. Blankenship owns one (1) share." Citizens alleged in its pleadings, and the defendants did not deny, that Wesley Blankenship, president of Wallace Theaters at that time, orally stated to the president of Citizens that his brother, Royce, was the owner of 50% of the said corporation and that Royce's one share represented said 50%.

On February 9, 1968, Citizens National Bank, joined by two other banks, filed a creditor's petition in the U. S. District Court for the Northern District of Texas asking that Royce Blankenship be adjudged a bankrupt. Royce Blankenship contested the involuntary bankruptcy proceedings. This petition has not been dismissed, no receiver or trustee has been appointed, and the said cause remains pending.

On June 14, 1968, the deposition of Wesley Blankenship was taken in reference to the bankruptcy proceedings and it was dis-covered that the total outstanding shares of stock in Wallace Theaters was, as of the date of the pledge to Citizens, 250 shares instead of two shares. It was also discovered that Royce Blankenship owned a total of 125 shares instead of one share and that the 125 shares did represent a 50% ownership in the corporation. The other 124 shares that Royce Blankenship owned, but had not transferred to the bank, were represented by a stock certificate in the possession of Wesley Blankenship.

Citizens Bank then filed suit against Royce Blankenship, Wesley Blankenship and Wallace Theaters in the 140th District Court of Lubbock County to reform the separate collateral agreement in order that it express the true intent of the parties. Citizens also asked that security title to the said 124 shares of stock be vested in Citizens Bank and that Wesley Blankenship be ordered to deliver the stock certificate to the plaintiff.

Defendants filed a plea to the jurisdiction of the District Court on the ground that the state court was without jurisdiction by reason of the pending action in involuntary bankruptcy in the U. S. District Court. Defendants also filed a plea in abatement asking that the cause be abated pending a final determination by the bankruptcy court. Wesley Blankenship and Wallace Theaters filed an answer admitting possession of the stock certificate and denied any interest therein.

The parties proceeded to a trial before the court upon the pleadings and admissions and no additional testimony was introduced. The District Court found, without objection by Royce Blankenship, that there was a mutual mistake in the making of the collateral agreement in that Royce Blankenship had intended to pledge to Citizens his 50% interest in the Wallace Theaters. The court reformed the collateral security agreement so as to include the additional 124 shares and ordered that the title and possession of the stock be delivered to Citizens.

Royce Blankenship in this appeal alleges that the 124 shares of stock were in his constructive possession; that when the bankruptcy petition was filed, all property of the alleged bankrupt passed into the custody of the bankruptcy court; and that the District Court had no jurisdiction to determine Citizens' claim to property in the custody of the bankruptcy court.

■ Royce Blankenship's points of error are based upon the supposition that at the time the petition was filed in the bankruptcy court he had constructive possession of 124 shares of stock held by his brother, Wesley Blankenship. Such is not the case. The stock was held by Wesley Blankenship in constructive trust for Citizens; therefore, Citizens had constructive possession of the stock, and not Royce Blankenship.

■ A constructive trust may arise whenever property is acquired or retained under circumstances amounting to fraud. The property is impressed with a constructive trust in order to provide relief against one who, by any means or in any way against equity and good conscience, either has obtained or holds legal title to property which he ought not in good conscience hold or enjoy. Deep Oil Development Co. v. Cox, 224 S.W.2d 312 (Tex.Civ.App., refused, n. r. e.).

■ To enforce a constructive trust, there is no necessity that there be an express agreement by the parties. It is "impressed on property, without regard to the intention of anyone, in order that the owner may be held to account as trustee and that the property may be followed in the hands of third persons who are not innocent purchasers." Texas Company v. Miller, 165 F.2d 111, 116, 5th Cir., 1947.

■ A constructive trust is born of fraud, for it is fraud, either actual or constructive, which is an essential element of a constructive trust. Talley v. Howsley, 142 Tex. 81, 176 S.W.2d 158 (Sup.Ct.1943).

Constructive fraud may be based upon a misrepresentation or a mistake; or it may be "imposed by law because the person holding the title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property." Omohundro v. Matthews, 161 Tex. 367, 341 S.W.2d 401, 405 (Sup.Ct.1960). Here there was a misrepresentation that the one share of stock represented a 50% interest in the corporation. The trial court found as a matter of law, without objection by Royce Blankenship, that there was a mutual mistake. To permit Royce Blankenship to be unjustly enriched by such a misrepresentation and mistake would be constructive fraud. All the elements of a constructive trust were present—an intent to pledge Royce Blankenship's 50% interest in Wallace Theaters to Citizens National Bank, a failure to transfer that interest because of a mutual mistake, and constructive fraud. A constructive trust arose at the time the separate collateral agreement was entered into vesting the bank with equitable title to the stock. Pope v. Garrett, 147 Tex. 18, 211 S.W.2d 559 (1948). Royce Blankenship had legal title, Wesley Blankenship had actual possession and Citizens had equitable and beneficial ownership rights. Citizen's thus had constructive possession of the stock, "constructive possession" being defined as that possession which the law annexes to ownership of property when there is a right to the immediate and actual possession of such property. "Constructive possession is that which exists without actual personal occupation of land or without actual personal present dominion over a chattel, but with an intent and capability to maintain control and dominion. Possession may, but need not, imply title." Rodella v. U. S., 286 F. 2d 306, 311, 9th Cir. 1960.

The U. S. 5th Cir. Court of Appeals recognized the existence of a constructive trust "in order to prevent the unjust enrichment of the bankrupt estate at the expense of the Appellant." Texas Company v. Miller, supra. But the facts and evidence regarding the creation of the con-

structive trust are to be governed by the local law of each state. Jaffke v. Dunham, 352 U.S. 280, 77 S.Ct. 307, 1 L.Ed.2d 314 (1957).

Since Citizens Bank had constructive possession of the stock at the time the petition in bankruptcy was filed, the stock did not pass into the custody of the bankruptcy court. The trial court had jurisdiction to reform the separate collateral agreement and order the delivery of the stock certificates.

Affirmed.