NO. 07-08-00486-CV

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL A

 



APRIL
14, 2010

 



 

IN THE MATTER OF THE MARRIAGE OF ROBERT GRANT HARRISON AND JULIA ELIZABETH
HARRISON



 



 

 FROM THE 72ND DISTRICT COURT OF LUBBOCK
COUNTY;

 

NO. 2007-539,829; HONORABLE RUBEN GONZALES REYES, JUDGE



 



 

Before CAMPBELL
and HANCOCK and PIRTLE, JJ.

 

 

OPINION

Appellant, Robert Grant Harrison
(Robert), appeals from a judgment of divorce that granted a constructive trust
in favor of intervenor, Mack Elston (Mack), in certain funds previously
deposited into the registry of the court pursuant to an agreed order.  Robert presents four issues for our
consideration.  First, Robert contends
that the evidence was legally and factually insufficient to support 1) a
finding of a confidential relationship between Robert and Mack, and 2) a
finding that Robert committed fraud against Mack.  The third issue requests that we render
judgment confirming the unchallenged finding of fact that the monies in the
registry of the court were his separate property.  The fourth issue is a conditional issue
which, because of our resolution of the other issues, we need not address. 

Factual and
Procedural Background

Robert and Julia “Julie” Harrison
(Julie) were married September 13, 2006. 
After the marriage, the couple moved into Robert’s home in Winchester,
Kentucky.  On December 28, 2006, while
Robert and Julie were out of town, the home and all its contents were destroyed
by a fire.  After living in a motel in
Winchester for a period of time, the parties, who are both from Lubbock, Texas,
decided to move back to Lubbock.  They
did so in January 2007 and decided to purchase a home in Lubbock.  On February 8, 2007, they purchased a home
for the sum of $434,000.  At the closing
of the purchase, $215,816.92 was paid in cash to the seller.  This sum represented the proceeds from the
insurance payment for the casualty loss to Robert’s home in Kentucky.  Additionally, Julie borrowed $10,000 from
Mack, her father, for the escrow payment, and Robert borrowed $9,664.14 from
his mother.  The balance of the purchase
price was made up by a note to a bank.

The parties immediately began
spending money to furnish the house and for other personal expenses.  The record reflects that, soon after the
marriage, Julie moved her 401(k) that she had received in the property division
of a previous divorce from TIAA CREF to Modern Woodmen of the World where the
fund would be administered by Robert’s brother. 
On February 16, 2007, Julie deposited the first $100,000 she had
withdrawn from her 401(k) into her First United bank account.  On March 1, 2007, Julie withdrew another
$130,000 from her 401(k) and deposited it into her First United bank account.  

At the time of each withdrawal, Julie
executed a document with Modern Woodmen of the World that she did not desire to
have federal income taxes withheld from the amount withdrawn.  The testimony at trial was that Robert
actually filled out the withdrawal forms. 
However, Julie admitted that she did sign each of the requests to
withdraw funds from her 401(k).  

After the funds were spent on
personal items, Robert and Julie were faced with the task of putting the funds
back in Julie’s 401(k) or else suffering a substantial IRS penalty for early
withdrawal.  The possible tax
ramifications of the withdrawals led Robert and Julie to contact Mack about
furnishing the funds to replenish the 401(k) account.  Precisely what was said by whom during the
conversation(s) regarding funds for the 401(k) account was hotly disputed at
the trial.  However, what is clear is
that, following the conversations, Mack furnished $100,000 on April 16, 2007,
in the form of two checks for $50,000 each. 
These funds were placed into Julie’s 401(k) on April 23, 2007.  On May 27, 2007, Mack furnished another
$100,000 to replenish Julie’s 401(k). 
Those funds were deposited into Julie’s 401(k) on June 1, 2007.  

During the trial, Julie initially
testified that Robert told her he would repay the money that Mack had furnished
to replenish her 401(k) out of the proceeds of the insurance from the casualty
loss in Kentucky.  Later, during
cross-examination, Julie testified that the $200,000 in loans from Mack were to
be paid out of proceeds from the payment for the contents destroyed in the
Kentucky fire.  Mack testified that he
expected to be repaid out of the proceeds of the insurance but did not specify
any portion of the Kentucky casualty loss from which he was to be repaid.

Robert filed for divorce from Julie
on June 29, 2007.  Julie answered the
petition for divorce on July 6, 2007.  On
September 4, 2007, the agreed temporary orders were entered that required the
proceeds from the sale of the parties’ Lubbock home to be placed into the
registry of the court.  On April 29,
2008, Mack filed a petition in intervention alleging that Robert had been
guilty of committing fraud against him and breaching a fiduciary duty owed to
him.  Mack sought damages in the amount
of $200,000 and, requested that the trial court impose a constructive trust in
favor of Mack on the $217,239.74 deposited into the registry of the court.  Trial was to the court on June 10-11,
2008.  At the conclusion of the
testimony, the trial court took the case under advisement and, on July 3, 2008,
sent a letter to counsel advising them of his decision.  A final decree was prepared and entered on
October 6, 2008.  Subsequently, based
upon Robert’s request, the trial court entered its Findings of Fact and Conclusions
of Law on November 12, 2008.  This appeal
followed.

Through his issues, Robert contends
that some of the trial court’s findings of fact were based upon legally or
factually insufficient evidence. 
Additionally, Robert contends that this court should render judgment
that the entire sum held in the registry of the court should be paid over to
him as his separate property.  Lastly,
Robert has an alternative issue, concerning economic contribution, should we
decide to remand this matter.  

Standards of
Review

As this matter was tried without a
jury and the trial court filed findings of fact and conclusions of law, we
treat those findings with the same force and dignity as a jury’s verdict upon
jury questions.  See Latch v.
Gratty, Inc., 107 S.W.3d 543, 545 (Tex. 2003) (citing Catalina v.
Blasdel, 881 S.W.2d 295, 297 (Tex.1994)). 
The trial court’s findings of fact are reviewed for legal and factual
sufficiency of the evidence under the same standards as applied to jury
findings.  See Ortiz v. Jones,
917 S.W.2d 770, 772 (Tex. 1996).  

Legal Sufficiency

            In
reviewing a challenge to the legal sufficiency of the evidence, we must credit
evidence that supports the verdict if a reasonable fact finder could have done
so and disregard contrary evidence unless a reasonable fact finder could not
have done so.  See Akin, Gump,
Strauss, Hauer & Feld, L.L.P. v. Nat’l Dev. & Research Corp., 299
S.W.3d 106, 115 (Tex. 2009).  Challenges
to the legal sufficiency of the evidence will be sustained when 1) there is a
complete absence of evidence of a vital fact, 2) the court is barred by rules
of law or of evidence from giving weight to the only evidence offered to prove
a vital fact, 3) the evidence offered to prove a vital fact is no more than a
scintilla, or 4) the evidence conclusively establishes the opposite of the vital
fact.  Id.  If the evidence is so weak as to do no more
than create a mere surmise or suspicion, then that evidence does not exceed a
scintilla.  Id.  

Factual Insufficiency

            In
a factual sufficiency review, we must review all of the evidence both for and
against the finding of the trial court.  See
Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex.
1989).  After considering all of the
evidence in a neutral light, if we find that the evidence supporting the
finding is so weak that it does not support the finding or is so against the
great weight of the evidence that the finding is clearly wrong and unjust, then
we will reverse.  See Pool v.
Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986).

Conclusions of Law 

            The
trial court’s conclusions of law are not reviewable from an evidentiary
standpoint, however; we may review the conclusions drawn from the facts to
determine their correctness.  See Ashcroft
v. Lookadoo, 952 S.W.2d 907, 910 (Tex.App.—Dallas 1997, writ denied) (en
banc).

Analysis

            In
order to be entitled to a constructive trust, Mack must prove the following
elements:

(1)  Breach of an informal relationship of special trust or
confidence arising  prior to the
transaction in question, or actual fraud;

 

(2)  Unjust enrichment of the wrongdoer;

 

(3)   Tracing to an
identifiable res.

See Mowbray v. Avery, 76 S.W.3d 663, 681 n.27
(Tex.App.—Corpus Christi 2002, pet. denied). 
For the purposes of our analysis, we will assume that the evidence is
sufficient to prove that there was fraud[1]
and unjust enrichment of Robert.  We will
concentrate our analysis on the third element, tracing to an identifiable res.

            The
trial court entered a finding that the $217,239.74 that was deposited into the
registry of the court originated from the casualty loss suffered by Robert to
his separate property home in Kentucky. 
The testimony and exhibits entered into evidence confirm that
finding.  However, that same evidence
proves that the money placed into the registry of the court was initially
received by Robert as payment for the loss of his Kentucky home and became part
of the downpayment for the home the parties purchased on February 8, 2007.  The trial court also found that Robert had
promised to repay the advance of funds made by Mack out of the proceeds of the
casualty insurance on the residential property that Robert owned in
Kentucky.  However, there is no finding
as to when that promise was made.  The
documentary evidence at trial reflects that a deposit for $100,000 was made
into the community bank account of Robert and Julie on April 14, 2007.  The record further reflects that, on April
23, 2007, a check for $100,000 was written on that same bank account to Julie’s
401(k) account.  On May 22, 2007, there
is a $100,000 deposit into the community bank account with the notation that it
was from Mack and Doris Elston.  On June
1, 2007, a second check was written from the community bank account payable to
Julie’s 401(k) in the corresponding amount of $100,000.  

Mack’s testimony did not pinpoint the
date when he had the conversation(s) with Robert about repayment of the loan
being made from proceeds of the casualty insurance.  However, Mack testified the conversation(s)
took place after Robert had brought over the $32,000 check that Mack testified
was intended as repayment for money previously loaned to Julie.  That check was drawn on the community bank
account on March 7, 2007.  Therefore, the
evidence suggests that sometime between March 7, 2007 and April 14, 2007, when
the first $100,000 loan was deposited into the couple’s bank account, Robert
spoke to Mack about advancing the first $100,000 to repay Julie’s 401(k).  Therefore, we can deduce that, at the time
Robert made any statement(s) about repaying from the proceeds of insurance he
was not referring to the original payment for the structure loss since those
funds had previously been paid and used to purchase the community home in
Lubbock.

            Using
the foregoing factual findings and evidence from the trial, we begin analyzing
the tracing issue by noting that, when a party attempts to impose a
constructive trust over funds, “. . . the trust fund must be clearly traced
into other specific property; that nothing must be left to conjecture, and that
no presumptions, except the usual and necessary deductions from facts proven,
can be indulged.”   Meyers v. Baylor
Univ., 6 S.W.2d 393, 394 (Tex.Civ.App.—Dallas 1928, writ ref’d.)  The proposition regarding the tracing of
funds into the trust was reaffirmed by the Texas Supreme Court in Wilz v.
Flournoy, 228 S.W.3d 674, 676 (Tex. 2007). 
The foregoing rule is subject to modification when the trustee, the
wrongdoer, mingles the trust funds with his own property or invests it in such
a manner that the trust funds can no longer be separated or identified.  See Meyers, 6 S.W.2d at
395.  The Wilz opinion states
that, once the burden of tracing has been met, the entire property will be
treated as subject to the trust, except insofar as the trustee can distinguish
and separate that which is his own.  Wilz,
228 S.W.3d at 676 (citing Eaton v. Husted, 172 S.W.2d 493, 498-99 (Tex.
1943)).  

            The
record demonstrates that the property on which the trial court imposed the
constructive trust had already been converted from the proceeds of the casualty
loss to the separate property home in Kentucky into the downpayment for the
home in Lubbock.  The closing on the
purchase of the Lubbock residence occurred on February 8, 2007.  According to Mack’s own testimony, he did not
discuss the loan of the money to Robert and Julie until some date after March
7, 2007.  Therefore, Mack, as proponent
of the constructive trust, is not able to trace the funds he claimed were
wrongfully procured into the specific property that the trial court impressed
with the constructive trust.  

            Mack
cites the court to a number of cases he contends support the imposition of the
constructive trust at issue.  However,
the cases cited by Mack do not support his contention.  In the case of In re Nolder, 48 S.W.3d
432, 434(Tex.App.—Texarkana 2001, no pet.), the stock that the trust was traced
to was in existence and the proceeds from the stock options ordered divided
between the parties by the court could be traced directly to the new
stock.  In our fact scenario, the
property cannot be traced back to Mack’s loan or the funds that were promised
to be used for repayment.  In Hudspeth
v. Stoker, 644 S.W.2d 92, 94 (Tex.Civ.—San Antonio 1982, writ ref’d.), the
facts involved a replacement insurance policy and a violation of a court
order.  Although the Hudspeth
court talked at length about the general considerations of equity that give
rise to the remedy of a constructive trust, the fact remains that the court
there could trace the promise broken, the court order, directly into the
replacement policy.  Id. at
95-96.  Such is not the state of the
evidence before us.  

Mack also places great faith in this
court’s decision in Sever v. Mass Mutual Life Insurance Co., 944 S.W.2d
486, 492 (Tex.App.—Amarillo 1997, writ denied). 
However, the issues addressed in Sever were beneficiary
designation and whether an actual trust, as opposed to a constructive trust,
should have been imposed over the funds at issue.  Id. The issue litigated at trial and
on appeal did not involve tracing of funds into a constructive trust.  In In re Loftis, 40 S.W.3d 160, 165
(Tex.App—Texarkana 2001, no pet.), the issue was a resulting trust and the res
was the property purchased; the case did not involve the tracing of funds into
a constructive trust.  In Zapata Corp.
v. Zapata Gulf Marine Corp., 986 S.W.2d 785, 786 (Tex.App.—Houston [1st
Dist.] 1999, no pet.), and in Pinnacle Data Servs, Inc. v. Gillen, 104
S.W.3d 188, 193-94 (Tex.App.—Texarkana 2003, no pet.), there were no issues
regarding the tracing of funds into a constructive trust.  The same is true for the case of Blankenship
v. Citizen’s Nat’l Bank of Lubbock, 449 S.W.2d 77, 79
(Tex.Civ.App.—Amarillo 1970, writ ref’d n.r.e.), in which there was never an
issue of tracing raised by any of the litigants.  All of these cases stand for a general
proposition that constructive trusts are used to right a wrong or prevent
unjust enrichment, but none of them involve tracing of funds.  Finally, it should be noted that the relief
Mack seeks, the imposition of a constructive trust, does not request that the
trial court trace the funds Mack loaned. 
Had he done so, we would be discussing imposition of a constructive
trust on Julie’s 401(k).

            We,
therefore, hold that there is a complete absence of a vital fact, the tracing
of the funds to an identifiable res.  See
Mowbray, 76 S.W.3d at 681 n.27. 
The absence of evidence regarding an element of Mack’s case results in
the evidence being legally insufficient. 
See Akin, Gump, Strauss, Hauer & Feld, L.L.P., 299
S.W.3d at 115.  Accordingly, we reverse
the judgment imposing a constructive trust to benefit Mack and render judgment
that the funds on deposit with the court be paid over to Robert pursuant to the
trial court’s finding of fact and conclusion of law that the same are his
separate property.  In all other
respects, the trial court’s judgment is affirmed.

Conclusion

            The
judgment of the trial court is reversed and rendered in part and affirmed in
part.

 

Mackey K.
Hancock                                                                                                                Justice

 

 

 

 

            








 











[1]
We make no assumption regarding the sufficiency
of the evidence to prove breach of an informal relationship of special trust or
confidence.