**Opinion filed April 25, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00130-CV
_____

**TERESA SHUMSKIE, Appellant**

**V.**

**TRINA FINNELL, Appellee**

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause No. CV56097**

## O P I N I O N

On August 16, 2019, approximately two weeks before his death, Gary Shumskie transmitted a form to American General Life Insurance Company (American General) naming Appellee Trina Finnell, his spouse at the time, as the primary beneficiary of his $500,000 life insurance policy. Previously, the primary beneficiary had been Appellant Teresa Shumskie, his former spouse. Teresa had

been named beneficiary pursuant to a 2010 divorce decree that obligated Gary to make periodic payments on a judgment that was secured in part by the policy proceeds. Following a bench trial, the court rendered a declaratory judgment, awarding Teresa $65,000, the amount that Gary owed her at the time of his death. The balance of the policy proceeds were then awarded to Trina. Dissatisfied with this result, Teresa has appealed, seeking to recover all of the policy proceeds.

We affirm the judgment of the trial court.

*Background Facts*

Gary and Teresa divorced on August 27, 2010. In order to equalize the division of property between the parties, the divorce decree awarded Teresa a judgment of $600,000, which was to be paid by Gary in monthly installments of $5,000. The decree required Gary to obtain a life insurance policy that designated Teresa as the beneficiary. Per the decree, the policy—along with several other assets—would provide Teresa with "an equitable lien and express legal lien" on Gary's debt. The decree further clarified that Teresa's interest therein was "in the nature of a purchase-money lien." It also stated that "[t]he amount on the life insurance policy may be reduced by [Gary] as the debt to [Teresa] is reduced."

At the time of the divorce, Gary already owned the American General policy, which he had acquired in 2004,[1] and it is undisputed that the lien that is described in the decree should attach to that policy.

Gary attempted to amend the beneficiary designation twice: once in 2016 and once in 2019.

In November 2016, Gary submitted a letter to American General which expressed his intention to limit Teresa's beneficial interest in the policy to the

---

[1] In order to satisfy the requirement that he acquire $600,000 in life insurance coverage, Gary also obtained a $100,000 insurance policy, which he later allowed to lapse.

amount of his ongoing debt, paying the balance to Tyler Shumskie and Wesley Shumskie—his sons——in equal shares. The letter was accompanied by a form that designated Teresa as primary beneficiary and named Tyler and Wesley as contingent beneficiaries. Subsequently, American General responded with a letter requesting that Gary fill out a new change of beneficiary form, which included blanks for the percentages that should be given to each primary beneficiary. It also indicated that further changes of the percentages for each beneficiary designation would require a new form. However, there is no indication in the record that Gary took action in response to American General's letter.

On August 16, 2019, Gary again submitted a written request to change beneficiaries, this time adding Trina as the primary beneficiary. The request was provided on a form that was promulgated by American General and was signed by Gary. Thereafter, on August 29, Gary executed a document entitled the "Last Will and Testament of Gary Shumskie." Although most of the will contains terms disposing of Gary's estate, paragraph III(A) also contains the following language:

> By Final Decree of Divorce . . . I agreed and was ordered to pay my former wife, Teresa Lou Shumskie, the total sum of $600,000.00, payable in monthly installments of $5,000.00 each. I hereby give to Teresa Lou Shumskie the balance of any sums I may still owe Teresa Lou Shumskie by reason of this $600,000.00 obligation set out in this Final Decree of Divorce existing at the time of my demise, the balance to be paid wholly from my [bank account] and [the American General policy].

Trina testified that, based on this language, it was clear that Gary had "made provision" for the balance of his debt to be satisfied before she would receive any policy proceeds.

Gary died on September 1, 2019. Thereafter, both Trina and Teresa made claims to American General for the policy's proceeds. In response, American General sent a letter to the parties indicating that it did not know "to whom, and in

3

what amount, it may be liable." On the same day, Trina filed suit against Teresa and American General, seeking injunctive relief, as well as a declaration that she was entitled to the policy proceeds.

American General tendered the policy proceeds, plus accrued interest thereon, into the registry of the court in exchange for a release from Trina and Teresa. After a brief bench trial, the trial court found that Trina was the beneficiary under the policy but awarded $65,000 out of the funds in the court's registry to Teresa in satisfaction of Gary's remaining debt obligation.

*Analysis*

Teresa brings five issues challenging the trial court's judgment. In her first issue, Teresa asserts that she was "the sole primary and unrestricted beneficiary" of Gary's life insurance policy with American General, and that Trina failed as a matter of law to show her entitlement to any of the policy proceeds. Her second issue presents an alternative argument—that she was a co-owner of the policy, entitled to $250,000 plus $65,000 for the amount that Gary owed her at the time of his death. Teresa asserts in her third issue a factual sufficiency argument as a follow-up to her first two issues. In her fourth issue, Teresa challenges sixteen specific findings of fact and conclusions of law. Finally, Teresa asserts in her fifth issue that the trial court erred by refusing her requests for additional findings of fact and conclusions of law with respect to her first two issues.

*Declaratory Judgments*

The Texas Uniform Declaratory Judgment Act allows a court to "declare rights, status, and other legal relations" among the parties. TEX. CIV. PRAC. & REM. CODE § 37.003(a) (West 2020). In such cases, the party designations of plaintiff and defendant do not necessarily determine the manner in which the burden of proof is allocated. *Berthelot v. Brinkmann*, 322 S.W.3d 365, 369 (Tex.

4

App.—Dallas 2010, pet. denied). Rather, it is the party who asserts an affirmative claim for relief that has the burden of proving its allegations. *Id.*; *see Garden Oaks Maint. Org. v. Chang*, 542 S.W.3d 117, 129 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

In this case, Trina and Teresa each make conflicting claims regarding the allocation of the policy proceeds. As such, each party bears the burden of proving her own claim.

*Jurisdictional Issues*

Teresa asserts that the trial court erred when it found that Trina had standing to seek a declaration that she was the policy beneficiary (Issue No. 4(a)). Similarly, Teresa challenges the trial court's findings that it had subject-matter jurisdiction over Trina's claim to policy benefits (Issue No. 4(b)), and that Teresa failed to prove her claim of release and waiver (Issue No. 4(o)).

"The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome." *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). "[T]he standing doctrine requires that there be (1) 'a real controversy between the parties,' that (2) 'will be actually determined by the judicial declaration sought.'" *Id.* at 849; *Stephens v. Three Finger Black Shale P'ship*, 580 S.W.3d 687, 704 (Tex. App.—Eastland 2019, pet. denied). "Without standing, a court lacks subject matter jurisdiction to hear the case." *Lovato*, 171 S.W.3d at 849. We review standing issues de novo. *Stephens*, 580 S.W.3d at 704.

In this case, Trina introduced evidence showing that Gary attempted to name her as the beneficiary under the policy by transmitting a change-of-beneficiary form to American General in August 2019. Where a plaintiff can introduce even partial provisions of an insurance contract that would compel recovery under a policy, such

evidence is sufficient to establish the plaintiff's standing. *Paragon Sales Co., Inc. v. New Hampshire Ins. Co.*, 774 S.W.2d 659, 661 (Tex. 1989). Similarly, a former beneficiary under a life insurance policy has standing to bring suit to contest a change of beneficiary on the grounds of undue influence. *Cobb v. Justice*, 954 S.W.2d 162, 168 (Tex. App.—Waco 1997, pet. denied). While not identical to the evidence that plaintiffs introduced in *Paragon Sales* and *Cobb*, Trina's evidence that Gary attempted to substitute her as beneficiary under the policy demonstrates that she has a colorable claim, and therefore a similar, justiciable interest in a controversy concerning the disposition of the funds.

In her brief, Teresa does not offer an explanation as to why she believes subject-matter jurisdiction is at issue. However, in her pleadings below, she tied the issue of subject-matter jurisdiction into her defenses of release and waiver. Specifically, Teresa claimed that Trina released all of her claims against American General as a part of the order that placed the funds into the registry of the court, and that the release "necessarily includes all claims asserted by [Trina] in this suit." However, Trina does not and could not, in any event, seek damages from American General, which has not denied her claim, and has instead taken the position that it does not know how the claim should be paid. Furthermore, having tendered the funds into the registry of the court, American General is in the same position as a stakeholder that is dismissed after filing an interpleader action, and it is no longer a necessary party to any judgment disposing of the funds. *See Clayton v. Mony Life Ins. Co. of Am.*, 284 S.W.3d 398, 402 (Tex. App.—Beaumont 2009, no pet.) ("Generally, the stakeholder is discharged from liability to the rival claimants in the first stage of the process."). As such, Teresa's claims of waiver and release are inapplicable.

The trial court cannot allow funds to sit in its registry indefinitely. *See Madeksho v. Abraham, Watkins, Nichols & Friend*, 112 S.W.3d 679, 686 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (because a trial court "cannot simply toss the money back out the clerk's window," the trial court unquestionably has quasi in rem jurisdiction to determine who owns funds tendered into the registry). As such, it must take action to identify the person(s) to whom the funds belong. Teresa has adequately demonstrated a justiciable claim that—if proven true—will allow the trial court to resolve the issue and distribute the funds. *See Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163–64 (Tex. 2004) ("A declaratory judgment requires a justiciable controversy as to the rights and status of parties actually before the court for adjudication, and the declaration sought must actually resolve the controversy."). On that basis, we overrule Issue Nos. 4(a), 4(b), and 4(o).

*Teresa's Lack of Affirmative Pleadings*

Teresa did not make any affirmative claims for relief in her pleadings. Normally, such a failure to plead a claim would operate to prohibit Teresa from securing affirmative relief. *See* Tex. R. Civ. P. 301 (A "judgment of the court shall conform to the pleadings."); *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 812–13 (Tex. 1983) ("[T]he judgment of the court must conform to the pleadings of the parties."). However, an issue may also be tried by consent of the opposing party. *See In re P.M.G.*, 405 S.W.3d 406, 417 (Tex. App.—Texarkana 2013, no pet.) ("A judgment, absent issues tried by consent, must conform to the pleadings."); *Elliott v. Hollingshead*, 327 S.W.3d 824, 837 (Tex. App.—Eastland 2010, no pet.) ("A trial court cannot grant relief to a party in the absence of pleadings supporting that relief, unless the issue has been tried by consent.").

In this instance, Teresa's claim that she is a beneficiary under the policy was tried by consent. From the outset, the parties appear to have shared an understanding

that the identity of the beneficiary of the policy was at issue. In his opening argument, Trina's counsel framed the disputed issue by stating that Teresa was the original beneficiary, that Gary purportedly named Trina as a new beneficiary just before his death, that Teresa claims the change of beneficiary is ineffective, and that the trial court's role would be to "determine the payment of the proceeds . . . between Mrs. Finnell and Mrs. Shumskie." Because Trina recognized and disputed Teresa's claim that she was a policy beneficiary, she expressly consented to a trial of that claim. *See Paint Rock Operating, LLC v. Chisholm Expl., Inc*., 339 S.W.3d 771, 775 (Tex. App.—Eastland 2011, no pet.).

However, the issues that are raised by Teresa on appeal are not limited to her status as a policy beneficiary. In her second issue, Teresa also claims that, because the American General policy was not divided or otherwise disposed of in her divorce decree with Gary, the evidence conclusively supports a finding that she is the owner of one-half of the policy.[2] Furthermore, as a part of her third issue, Teresa also complains that the trial court's refusal to render a finding on the question of her co-ownership of the policy was against the great weight and preponderance of the evidence. Similarly, Issue No. 4(c) complains that the trial court erred in ruling that Gary was the sole owner of the policy.

Trina argues that Teresa's status as an owner of the policy is a new issue, which may not be raised post-judgment or on appeal. In response, Teresa does not claim that she raised the issue in her pleadings or during trial, but instead asserts that she may, for the first time on appeal, raise her complaints relating to the trial court's refusal to render her requested findings on co-ownership, citing Rule 33.1(d) of the

---

[2]Although we do not reach the issue, Teresa's assertion that the American General policy was not among the property that was divided in the divorce decree appears to be incorrect. While the policy is not expressly named and awarded to Gary as such, it is included in a list of assets that are characterized as "property awarded to [Gary] by this Decree."

Texas Rules of Appellate Procedure.[3] Teresa's interpretation of Rule 33.1(d) is incorrect. Rule 33.1(d) provides that "[i]n a civil nonjury case, a complaint regarding the legal or factual *insufficiency* of the evidence . . . *as distinguished from a complaint that the trial court erred in refusing . . . to make an additional finding of fact*—may be made for the first time on appeal." TEX. R. APP. P. 33.1(d) (emphasis added). There is nothing in Rule 33.1(d) that allows Teresa to assert a basis for recovery post-judgment that was not included in her pleadings or tried by consent.[4] *See Cunningham*, 660 S.W.2d at 812–13; *Elliott*, 327 S.W.3d at 837.

We have reviewed the record and have found no indication that Teresa made a claim that she was a co-owner of the policy prior to the close of evidence. We likewise find no indication that the issue of co-ownership was tried by consent. For that reason, we hold that Teresa is not entitled to relief on the issue of co-ownership, and we overrule Teresa's second issue, as well as Issue No. 4(c). We also overrule Teresa's third and fifth issues, to the extent that they address the sufficiency of the evidence supporting Teresa's status as a co-owner of the policy.

Additionally, in Issue No. 4(p), Teresa complains about the trial court's findings that she failed to plead a claim for relief. We sustain Issue No. 4(p) to the extent it argues that Teresa did not successfully litigate her claim that she was a policy beneficiary. Otherwise, we overrule Issue No. 4(p).

---

[3]Teresa's reply brief cites Rule 33.1(d) of the Texas Rules of *Civil* Procedure, which does not exist. However, from her argument, it is clear that Teresa intends to cite the corresponding appellate rule.

[4]Teresa also asserts that she made the trial court aware of her requested issues and her supporting arguments through her motion to modify the judgment, the hearing on her motion to modify judgment, and her requests for factual findings and legal conclusions. All of these actions were undertaken post-judgment and were never supported by her pleadings.

9

*The Effect of the Divorce Decree*

In her first issue, Teresa complains that the evidence that Trina was the beneficiary of the policy was legally insufficient, and that the evidence instead conclusively establishes that Teresa is the proper beneficiary of the policy. Similarly, in her third issue, Teresa complains in part that the evidence was factually insufficient to support a finding that Trina was the beneficiary, and that the evidence instead points to Teresa as the primary beneficiary.

When parties challenge the legal sufficiency of the evidence supporting an adverse finding on which they did not have the burden of proof at trial, they must demonstrate that there is no evidence to support the adverse finding. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). Under a legal sufficiency review, we consider all of the evidence in the light most favorable to the prevailing party, make every reasonable inference in that party's favor, and disregard contrary evidence unless a reasonable factfinder could not. *City of Keller*, 168 S.W.3d at 807, 822, 827. We cannot substitute our judgment for that of the factfinder if the evidence falls within this zone of reasonable disagreement. *Id.* at 822.

The evidence is legally insufficient to support a finding only if (1) the record discloses a complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810. "Anything more than a scintilla of evidence is legally sufficient to support the finding." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). "More than a scintilla of evidence exists when the evidence would enable reasonable and fair-minded people to reach different conclusions."

10

*Burbage v. Burbage*, 447 S.W.3d 249, 259 (Tex. 2014). "However, if the evidence is so weak that it only creates a mere surmise or suspicion of its existence, it is regarded as no evidence." *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156 (Tex. 2014).

If a party attacks the factual sufficiency of an adverse finding on an issue in which the other party had the burden of proof, the attacking party must demonstrate that there is insufficient evidence to support the adverse finding. *Croucher*, 660 S.W.2d at 58. In a factual-sufficiency challenge, we consider and weigh all of the evidence, both supporting and contradicting the finding. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). We may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* at 407. We may not substitute our own judgment for that of the factfinder or pass upon the credibility of witnesses. *Id.*

Teresa contends that, independent of the terms of the policy, the decree and the agreement relating to the decree operate to nullify any change of beneficiary. Contrary to Teresa's position, we conclude that the effectiveness of a request for a change of beneficiary should be considered solely in light of the terms of the policy.

Life insurance policies often contain provisions that allow the insured to change the beneficiary at will. *See Alexander v. Alexander*, 701 S.W.2d 48, 50 (Tex. App.—Dallas 1985, writ ref'd n.r.e.); *Box v. S. Farm Bureau Life Ins. Co.*, 526 S.W.2d 787, 789 (Tex. App.—Corpus Christi–Edinburg 1975, writ ref'd n.r.e.). In such circumstances, the beneficiary has no vested interest prior to the insured's death. *Volunteer State Life Ins. Co. v. Hardin*, 197 S.W.2d 105, 107 (Tex. 1946); *Alexander*, 701 S.W.2d at 50; *Box*, 526 S.W.2d at 789.

In addition, insureds may enter into a separate contract by which they agree to maintain a particular person or group of people as beneficiaries. *See Alexander*,

701 S.W.2d at 50; *Box*, 526 S.W.2d at 789. In such an event, the beneficiaries described in the separate contract acquire a vested right in the policy proceeds, even though the terms of the policy contract allow the insured to designate a different beneficiary. *Alexander*, 701 S.W.2d at 50 (the rule that a beneficiary does not have a vested right in life insurance proceeds does not apply where the insured has contracted to designate and maintain such a beneficiary by way of a separate agreement).

Arrangements such as this often arise in connection with divorce settlement agreements. *See Alexander*, 701 S.W.2d at 50; *Box*, 526 S.W.2d at 788. Likewise, trial courts have the authority to order a child support obligor to obtain and maintain a life insurance policy for the benefit of the minor. TEX. FAM. CODE ANN. § 154.016 (West Supp. 2023). The purpose of the policy is to ensure that the support obligation is fully paid in the event of the insured's death. *See* FAM. CODE § 154.016(a) (Courts may order obligors to pay insurance requirements "that will satisfy the support obligation under the child support order in the event of the obligor's death.").

The arrangement that is described in Gary and Teresa's divorce decree, which characterizes Teresa's interest as a lien and which requires Gary to maintain a policy naming Teresa as beneficiary, is consistent with the arrangements in cases such as *Box* and *Alexander*. However, the existence of such an arrangement does not—as Teresa suggests—automatically void an attempted change of beneficiary that is consistent with the terms of the policy. Rather, it creates an equitable interest that attaches to the policy proceeds, regardless of the person(s) who receive the proceeds pursuant to the insurance contract.

The relationship between the insured and the insurer is governed solely by the terms of the insurance agreement, without reference to any external factors. This principle is illustrated in *State Farm Life Ins. Co. v. Martinez*, 174 S.W.3d 772 (Tex.

12

App.—Waco 2005), *rev'd on other grounds*, 216 S.W.3d 799 (Tex. 2007). In that case, an insurer refused to process a change-of-beneficiary form because it suspected that the insured was prohibited from doing so under a divorce agreement. *Id.* at 780. In holding that the insurer's refusal was improper, the Tenth Court of Appeals stated that the insurer is required to be indifferent as to the identity of the beneficiary. *Id.* at 779–80. Furthermore, it is under a contractual duty to effectuate any requested change of beneficiaries. *Id.* at 780. Thus, "even if the insured's first wife had a community interest in the policy proceeds when payable, the insurer had neither the contractual right nor legal standing to prevent the insured from changing the beneficiary." *Id.* at 779.

We agree with the Tenth Court of Appeals that the insurance carrier's duties must be directed to the terms of their policy agreement with the insured, to whom they owe contractual obligations, as well as numerous statutory duties, particularly with respect to the adjustment and payment of claims. Allowing divorce decrees to nullify otherwise valid policy changes places the carrier in a position where it cannot know that it is paying the correct beneficiary despite its clear obligations under the terms of the policy, adding uncertainty and delay to the claims process.

However, persons who are required to be designated as beneficiaries because of agreements outside of the policy may still pursue their interest in the policy proceeds by seeking an equitable remedy. In *Box*, for example, the parties to a divorce entered into an agreement whereby a husband was obligated to maintain a policy for the benefit of two children. 526 S.W.2d at 788. The divorce agreement provided that the beneficiaries could not be changed. *Id.* Notwithstanding the parties' agreement, the husband named his new spouse as the beneficiary several years later. *Id.* After the husband died, the insurance carrier interpleaded the funds. *Id.*

In ruling that the children were entitled to the policy proceeds, the Thirteenth Court of Appeals observed that, while "the insured has the right, under the terms of the insurance policy, to change the designated beneficiary," "the equity of the case requires that [he] . . . observe his contract." *Id.* at 789 (quoting *Locomotive Engineers' Mut. Life & Accident Ins. Ass'n v. Waterhouse*, 257 S.W. 304 (Tex. App.—El Paso 1924, writ ref'd)). Based on this analysis, the court held that the property settlement agreement gave the children a "vested equitable interest" in the proceeds of the insurance policy. *Id.*

We arrived at the same resolution several years later in *Gutierrez v. Madero*, 564 S.W.2d 185 (Tex. App.—Eastland 1978, writ ref'd n.r.e.). In *Guitierrez*, a spouse was required to designate his children as beneficiaries under a life insurance policy. *Id.* at 187. However, the agreed decree incorrectly described the policy. *Id.* After determining that the jury had properly found that the incorrect policy designation was a mutual mistake, we addressed the question of whether the children were therefore entitled to the proceeds from the policy, even though the policy beneficiary had been changed following the divorce. *Id.* at 186, 189. In so doing, we did not determine that the change of beneficiary under the policy was void, but instead held that a constructive trust could be imposed on the policy proceeds so that the funds could be awarded to the intended beneficiaries. *Id.* at 190.

In support of our decision in *Gutierrez*, we cited *Blankenship v. Citizens National Bank of Lubbock*, 449 S.W.2d 77 (Tex. App.—Amarillo 1969, writ ref. n.r.e.) for the proposition that, under circumstances "amounting to fraud," property is impressed with a constructive trust to provide relief "against one whom, by any means or in any way against equity and good conscience, either has obtained or holds legal title to property which [they] ought not in good conscience hold or enjoy." *Gutierrez*, 564 S.W.2d at 189 (quoting *Blankenship*, 449 S.W.2d at 79). We also

14

favorably cited *Hirsch v. Travelers Ins. Co.*, 341 A.2d 691 (N.J. Super. Ct. App. Div. 1975), a case in which a spouse improperly altered his children's beneficiary designation under similar circumstances, resulting in an award of restitution. *Gutierrez*, 564 S.W.2d at 189–90; *see also Tomlinson v. Lackey*, 555 S.W.2d 810, 813 (Tex. App.—El Paso 1977, no writ) (holding that a minor child possessed "a vested equitable interest in the proceeds of the insurance policy," and affirming trial court's imposition of a trust on same).

In short, a change of beneficiary that is properly effectuated under the terms of an insurance policy is not rendered void, even where the change of beneficiary is in violation of an agreement outside of the insurance contract. However, the person that the insured has agreed to name as beneficiary holds a vested equitable interest, which can be enforced by way of a constructive trust on the policy proceeds.

*The Substantial Compliance Standard*

The trial court found that Trina became the primary beneficiary under the policy as a result of Gary's submission of the August 2019 form. Teresa argues that the August 2019 form was not effective because it was never recorded by American General. The policy provides as follows:

> While this policy is in force the owner may change the beneficiary or ownership by written notice to us [American General]. When we record the change, it will take effect as of the date the owner signed the notice, subject to any payment we make or other action we take before recording.

Teresa asserts that American General never recorded the change-of-beneficiary form, and that—since the form was "unrecorded"—it never took effect. This argument is inconsistent with Texas law.

"Generally, an insured's right to change beneficiaries is governed by the terms of the policy." *Martinez*, 216 S.W.3d at 802. However, strict compliance with the

15

policy terms is not necessary. *Todd v. Mut. Ben. Life Ins. Co.*, 483 S.W.2d 889, 891 (Tex. App.—Waco 1972, writ ref'd n.r.e.). Instead, a change of beneficiary is effectuated when the insured substantially complies with the policy requirements. *Id.*; *Porter v. Garner*, 386 S.W.2d 618, 619 (Tex. App.—El Paso 1965, writ ref'd n.r.e.); *see also Garabrant v. Burns*, 111 S.W.2d 1100, 1104 (Tex. Comm'n App. 1938) (applying substantial compliance rule to policies issued by mutual benefit societies). Once the insured has substantially complied, the insurer must honor the request and effect the change. *Prudential Ins. Co. v. Durante*, 443 S.W.3d 499, 507 (Tex. App.—El Paso 2014, pet. denied). This duty to honor the request is ministerial in nature. *Martinez*, 174 S.W.3d at 780. As such, once an insured has substantially complied, the request becomes effective, even if the insurer claims to have rejected the form. *See Todd*, 483 S.W.2d at 892 (change of beneficiary became effective despite insurer's rejection of the form due to the absence of contingent beneficiaries).

Teresa argues that, because the American General policy requires that a change of beneficiary be recorded before it is effective, the August 2019 form never took effect. In support of this position, she points to *Rotating Services Indus., Inc. v. Harris*, in which the First Court of Appeals partially distinguished its facts from substantial compliance cases on the grounds that the policy therein contained a recording requirement. 245 S.W.3d 476, 483 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).[5] We do not read *Harris* as holding that, where recording is required by the policy, the absence of a recorded change of beneficiary will operate to nullify

---

[5]Teresa also points to *Garabrant, supra*, for the proposition that a policy's recording requirements must be satisfied. The *Garabrant* court questioned whether a recording requirement can be waived. *Garabrant*, 111 S.W.2d at 1104 ("We . . . assume, without deciding, that the provision that no change in beneficiary shall be effective unless and until such change is entered on the records of the home office of the association . . . might be waived by the association."). In so doing, the court appears to have assumed that a recording requirement was otherwise enforceable. However, it did not directly rule on the issue.

the request, even in the face of substantial compliance by the policyholder. Nevertheless, to the extent it may do so, we disagree.

In determining whether the August 2019 request effectuated a change of beneficiary, the issue is not whether American General recognized or recorded the change. Rather, the question is whether Gary's submission of the August 2019 form was in substantial compliance with the policy requirements. In resolving this question, we are mindful that there is no hard-and-fast rule; instead, each case must be decided on its own set of facts. *Durante*, 443 S.W.3d at 507.

With these principles in mind, we now turn to the question of whether, under the particular facts of this case, Gary's August 2019 change of beneficiary was in substantial compliance with the policy.

*Teresa's Consent/Status as Irrevocable Beneficiary*

Although Teresa maintains that she should prevail solely on the grounds that the August 2019 change was unrecorded, she also argues that the trial court erred in finding that Gary's August 2019 change-of-beneficiary form was in substantial compliance. Specifically, she offers three reasons that Gary was not in substantial compliance.

First, Teresa argues that Gary did not substantially comply because the policy required her consent before a different beneficiary could be named. Specifically, she asserts that, under the terms of the policy, Gary's rights are "subject to the consent of any living irrevocable beneficiary," and that she qualified as such a beneficiary. This argument raises two questions: (1) whether Teresa was an "irrevocable beneficiary," as she claims, and (2) if so, whether Gary failed to substantially comply with the irrevocable beneficiary requirement described above.

17

### A. *Was Teresa an "Irrevocable Beneficiary"?*

Teresa became the policy beneficiary by way of Gary's designation at the inception of the policy in 2004, long before the divorce decree. This designation does not describe Teresa's interest as "irrevocable," and Teresa does not argue that she was an irrevocable beneficiary when the policy was initially issued. Instead, she argues that the divorce decree operated to transform her into an irrevocable beneficiary.

While the policy does not define the term "irrevocable beneficiary," Texas courts have defined the word "irrevocable" as "incapable of being recalled, or revoked[;] past recall[;] unalterable." *Villasan v. O'Rourke*, 166 S.W.3d 752, 759 (Tex. App.—Beaumont 2005, pet. denied) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1196 (1986)); *see also Hintz v. Lally*, 305 S.W.3d 761, 770 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). Under such definition, the arrangement described in the divorce decree does not qualify as one that is "irrevocable." Gary was free, for example, to unilaterally reduce the face amount of the policy as his debt was paid. Likewise, Teresa's interest, which is expressly limited to that of a lienholder, can be fully extinguished by payment of the debt. As counsel for Teresa argued to the trial court in a post-trial motion, Gary was free to name a co-beneficiary under the policy to the extent it did not affect the balance that was owed on Teresa's lien. Under these circumstances, Teresa's beneficial interest is neither "past recall" nor "unalterable."

When the divorce decree was negotiated, the parties could have required Gary to update his designation of Teresa in the policy, expressly describing her as an "irrevocable beneficiary." Likewise, the terms of the decree could have explicitly characterized Teresa's interest in the policy as "irrevocable." However, the parties did neither of these things. Instead, they created a lienholder-like interest that was

subject to reduction and modification as Gary's debt was satisfied. For these reasons, the trial court did not err in finding that the right to change the beneficiary belonged solely to Gary.[6]

### B. *Substantial Compliance with the Consent Requirement*

In any event, we believe that, in the context of Gary's overall efforts to protect Teresa's lienholder interest in the policy, there was factual support for a finding that Gary was in substantial compliance.

Trina asserts that paragraph III(A) of the will demonstrates Gary's intent to honor his debt to Teresa, if any remained at the time of his death, by way of payment from his estate and/or, alternatively, the policy proceeds. None of the trial court's findings explicitly rely on the contents of the will. However, the trial court does acknowledge that Trina's "pleadings and proof" state that her rights to the policy proceeds "are subject to the payment of the remaining indebtedness" that was owed to Teresa.

Although Trina does not describe it as such, we think that her characterization of paragraph III(A) is properly understood as a directive that the funds received by Trina under the policy should be held in trust, subject to any debt that was still owed to Teresa. No particular words of expression are essential for the creation of a trust. *Perfect Union Lodge No. 10, A.F. & A.M., of San Antonio v. Interfirst Bank of San Antonio, N.A.*, 748 S.W.2d 218, 220 (Tex. 1988). To create a trust, the beneficiary, the res, and the trust purpose must be identified. *Id.* The language of paragraph III(A) does all three of these, identifying Teresa as the person for whom the funds

---

[6]The trial court did not make a finding as to whether Teresa was an irrevocable beneficiary for purposes of the policy. However, it did find as a matter of law that "the right to change beneficiary was reserved to . . . Gary Shumskie" such that "the designation of Trina Finnell as beneficiary . . . became effective on the date of execution."

19

are held, identifying the policy, and describing the debt as the reason that the funds should be held for the benefit of Teresa.

Furthermore, while the inclusion of terms relating to an inter vivos trust within a will are unusual, they are not unprecedented. In *Sanderson v. Aubrey*, 472 S.W.2d 286 (Tex. App.—Fort Worth 1971, writ ref'd n.r.e.), for example, a testator revoked an inter vivos trust as a part of her will based on the erroneous assumption that the trust was instead testamentary in nature. *Id.* at 287. The Second Court of Appeals noted that it was "not troubled" by the testator's confusion regarding the non-testamentary nature of the trust. *Id.* Instead, it found that the language in the will constituted a "definitive manifestation" of an intent to revoke the trust and found the revocation—while not testamentary in nature—was nonetheless valid as of the date of the will. *Id.* at 288; *see also Appling v. Jay*, 390 S.W.2d 799, 802 n.3 (Tex. App.—Texarkana 1965, writ ref'd n.r.e.) ("[I]t sometimes happens that an instrument is so drawn that part of its provisions may be sustained as a will and the remainder, relating to another distinct subject matter, as another instrument.") (quoting 94 C.J.S. Wills § 165, p. 963).

The facts of this case are different from those in *Rector v. Metro. Life Ins. Co.*, 506 S.W.2d 696 (Tex. App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.), a case on which Teresa relies. In *Rector*, the insured had designated his minor daughter as a beneficiary under his policy, while his will provided that the executor would serve as trustee over "all . . . property coming into [the] Trustee's possession as a result of my death (including . . . insurance on my life)." *Id.* at 697. The First Court of Appeals held that, because the executor was not the policy beneficiary, the will did not operate to make her trustee over the policy proceeds. *Id.* This case is similar to *Rector* inasmuch as the will therein created a trust that could include non-testamentary assets. However, Gary's will describes Trina as both the beneficiary

20

*and* the person who is responsible for protecting Teresa's interest. Additionally, Gary took steps to name Trina as the beneficiary under the terms of the policy. As such, unlike the will in *Rector*, Gary's will reasonably presumes that Trina will have possession of the policy proceeds.

Furthermore, even if Gary's will did not create a trust, it was certainly Trina's understanding, that Gary had "made provision" that Teresa's interest should be paid from his estate and/or the policy proceeds, and Trina's conduct has indicated her own belief that she was bound by Gary's intentions. Given Gary's clear efforts to protect Teresa's lien interest, we believe that, even if Teresa qualified as an irrevocable beneficiary under the terms of the policy, the trial court's finding that Gary was in substantial compliance was not so against the great weight and preponderance of the evidence as to be manifestly unjust.

*The Absence of a Date on the August 2019 Form*

Teresa also argues that Gary was not in substantial compliance with the policy because he did not date the August 2019 form. In this regard, the record indicates that American General decided not to record the form because it was undated. Teresa points out that a dated change of beneficiary is helpful to an insurer, because it may sometimes become necessary to determine the order in which conflicting change-of-beneficiary forms were signed.

However, the issue before the trial court was not whether a dated form would be more useful than an undated form. Rather, the issue was whether the form substantially complied with the requirements set forth in the policy. In that regard, the American General policy provided only that "the owner may change the beneficiary . . . by written notice to us."

Teresa also points to policy language indicating that the change of beneficiary "will take effect as of the date the owner signed the notice." She argues that this

language required Gary to include a date on the August 2019 form. However, Teresa reads too much into this provision. While this language assumes that the parties will have an understanding of the date that a change-of-beneficiary form was signed when a claim is made, it does not require a date to be affixed to a change-of-beneficiary form.

It is undisputed that Gary provided a "written notice" requesting a change of beneficiary on August 16, utilizing a form that was provided to him by American General. As such, the evidence before the trial court was factually and legally sufficient to support its finding that the change of beneficiary was submitted in a format that substantially complied with the requirements of the policy.

*Conditional Language in the August 2019 Form*

In her second argument against the trial court's finding on substantial compliance, Teresa maintains that conditional language in the August 2019 form operated to nullify its stated purpose of making Trina the policy beneficiary. The language at issue is contained in section D of the change-of-beneficiary form. It reads as follows:

> [Gary] warrants that the above-referenced beneficiary change is not subject to any prior agreements, contractual obligations . . . or court/administrative orders, including but not limited to divorce . . . proceedings ("Obligations"), which restrict, limit, or otherwise prohibit such change of beneficiary as contemplated. [Gary] acknowledges and agrees that in the event any obligations become known subsequent to the above-referenced beneficiary change being made, which if then-known to [American General], would have caused [American General] not to process the beneficiary change on the policy (or not to process the beneficiary change without the consent of a party other than [Gary], the beneficial change will become immediately void and [Gary] shall indemnify and hold [American General] harmless from any and all losses associated with the beneficiary change.

The language in section D has two effects, neither of which are germane under these facts.

As its first effect, section D provides American General with a warranty that the beneficiary change is not subject to any existing court or administrative orders or other obligations. These provisions lay the groundwork for American General to assert a claim for breach of warranty against Gary's estate, a claim that may well have been asserted had it paid the claim to Trina. However, while this clause may expose Gary's estate to litigation, it does not operate to void the change of beneficiary at the time it was submitted.

As its second effect, section D provides that, in the event American General discovers that it processed a change-of-beneficiary form that it would not have otherwise processed, the change of beneficiary will become void, and Gary will be required to indemnify American General. This condition was not met because American General never recorded the policy and never recognized that the claim should be paid to Teresa. To the contrary, upon learning of Teresa's interest, it announced that it did not know who should receive the benefits and tendered the proceeds into the registry of the trial court.

Section D may provide American General with legal protections under circumstances that are similar to this case, but it does not alter the clear and unambiguous purpose of the change-of-beneficiary form. For that reason, the trial court did not err when it rejected Teresa's arguments relating to Section D and found that Gary's submission of the form was in substantial compliance with the terms of the policy.

Because the trial court did not err in finding that Gary was in substantial compliance, we overrule Teresa's first issue, the remainder of Teresa's third issue,

Issue Nos. 4(d), 4(e), 4(f), 4(g), 4(i), 4(j), 4(k), 4(l), 4(m), 4(n), and the remainder of Teresa's fifth issue.

*Teresa's Interest in the Policy Proceeds*

In Issue No. 4(h), Teresa argues that the trial court erred when it found that Teresa's interest in the policy proceeds was limited to her status as a security/lien interest holder. In support of this argument, she claims that, because the divorce decree does not expressly limit her interest to that of a lienholder, it must necessarily put her in the same place as an unqualified primary beneficiary under the policy. Such a position is not consistent with the facts of this case or the applicable law.

The stated purpose of the decree in requiring Gary to maintain the policy was "to secure the payment" by Gary of various debts, including the cash award of $600,000. The decree also described Teresa's interest in the policy as "in the nature of a purchase-money lien." There is nothing in the decree to suggest that the policy plays any other role in the parties' agreement, nor is there any indication that the parties intended to provide Teresa with funds that are in excess of her share of the community property upon Gary's death. Accordingly, we overrule Issue No. 4(h). Having overruled each of Teresa's sub-issues, we overrule her fourth issue.

In connection therewith, we note that, even if Teresa were the proper beneficiary under the policy, her position would be that of any other lienholder in possession of a windfall. That is, Teresa, holding the funds as a secured creditor "in the nature of a purchase money-lien," would have been obligated to return the surplus funds that she collected from the policy proceeds to Gary's estate. *See First Nat. Bank of Seminole v. Hooper*, 104 S.W.3d 83, 86 (Tex. 2003) ("A secured creditor is not entitled to collect more than the amount of the debt from" the liquidation of collateral.) (quoting *Anand v. Nat'l Republic Bank*, 210 B.R. 456, 459 (Bankr. N.D. Ill. 1997)); *see also* TEX. BUS. & COM. CODE ANN. § 9.615(d)(1) (West

2021) (requiring a party holding a security interest to account to and pay the debtor for any surplus received after disposition of security interest). Had the trial court determined that Teresa was the correct beneficiary under the terms of the policy, such a determination may have raised questions about whether the estate should have been joined as a party so that it could assert its own claim to the proceeds. However, it does not appear that the trial court should have, in any event, awarded the balance of the policy proceeds to Teresa.

*Conclusion*

We recognize that, in changing the policy beneficiary, Gary violated a contractual and court-ordered obligation. We also recognize that—under other, similar circumstances—such actions could have and should have invited serious repercussions. However, the question of whether a requested change of beneficiary is effective must be resolved based on the terms of the policy, without reference to any agreements or court-ordered obligations that are beyond the scope of the insurance contract. As such, the trial court was called on to determine whether Gary's August 2019 request was in substantial compliance with the policy. In that regard, we have concluded that the trial court did not err when it found that Gary had the right to and did, in fact, successfully effectuate a change of beneficiary. The trial court's findings of substantial compliance are appropriate given the particular facts of this case. Specifically, the record shows that Gary's request was submitted in a form that was consistent with the policy requirements, and that, during the same time frame, Gary was acting in good faith in order to protect Teresa's lienholder interest. For these reasons, we conclude that the trial court's disposition of the case was not erroneous.

*This Court's Ruling*

We affirm the judgment of the trial court.

JOHN M. BAILEY

CHIEF JUSTICE

April 25, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.